PROVOSTY, J.
In 1845 plaintiff’s late husband, Charles Florival Metoyer, acquired a tract of land of 120 arpents, with buildings and improvements thereon. He acquired it in his own name. Plaintiff claims, however, that it was acquired during her marriage with him, and fell into the community of acquets and gains which existed between them, and that therefore she was owner of an undivided half of it, as survivor in community, when she executed the following instrument;
“State of Louisiana, Parish of Natchitoches.
“Be it known that on this day before me, Joseph Charleville, a notary public, in and for the parish of Natchitoches and state of Louisiana, and commissioned and qualified, personally came and appeared Mrs. O. Florival Metoyer of the parish of Natchitoches and state of Louisiana, who declares that she does by these presents divide with her two legal children, Charles Florival Metoyer and Juliette St. Ville, née Metoyer, all of the parish of Natchitoches, the following tract of land, to wit: A certain tract of land lying in said parish of Natchitoches on the left bank of Cane river descending, containing one hundred and twenty arpents more or less. Now the said Charles Florival Metoyer takes for his share the following tract, containing sixty arpents more or less, bounded above by lands formerly belonging to Sompayrac, below by the tract of Juliette St. Ville, née Metoyer, chosen by her in said partition, and Mrs. Juliette St. Ville chooses for her share the following land, containing sixty arpents more or less, lying on the left bank of Cane river descending 60 arpents, more or less, bounded by the tract of Charles F. Metoyer, below by the said Mrs. Juliette St. Ville, both tracts being bounded in rear by Dr. .Harrison: And the said parties hereby convey the one into the other the respective tract or parcel of land herein described and chosen by them as their respective shares, and they hereby one unto the other agree to warrant and defend the same, and they furthermore declared that they accept the partition as herein made as final and complete.
“Now the said Chas. F. Metoyer and Juliette St. Ville, née Metoyer, do by these presents obligate and bind themselves and heirs to support their mother, Mrs. F. Florival Metoyer, during her lifetime.
“This done and passed at the parish of Natchitoches and state of Louisiana in presence of Charles A. Sarpy, Jr., Emile E. Metoyer, competent witnesses, who hereunto sign their names, with the parties and me, notary public, on this the 24th day of March, 1S92.
“It is hereby stipulated that the said coheirs-have and are entitled equally to half of all build *63 ings on the land herein divided and accepted by them.
“[Signed] V. F. Florival Metoyer.
“O. F. Metoyer.
“Juliette St. Ville, née Metoyer.
“Attest:
- “0. A. Sarpy, Jr.
“Emile Metoyer.
“Joseph Charleville, Notary Public.”
Plaintiff alleges that this act was a donation, and that it is null, under article 1497, Oiv. Code, for the reason that she divested ■herself by. it of all her property, reserving none for her subsistence; and she prays that the said nullity be decreed, and that her said interest in said property be restored to her, free of incumbrances.
On the same day on which this partition was made, but by separate acts, Charles F. Metoyer and Mrs. St. Ville sold the partitioned property to Vilfried Metoyer; each selling the part held in severalty under the partition.
A little more than one year thereafter, in November, 1893, Vilfried Metoyer sold to Mrs. Octavie Metoyer, wife of Charles F. Metoyer, the same property thus sold to him by Charles F. Metoyer. Six years thereafter, in July, 1898, Mrs. Octavie Metoyer executed an act in which she partitioned said property among her four children, made defendants herein, namely, Rita, Ernest, Edgar, and Edward Metoyer. She declares in the act that she acquired the property from her husband, Charles F. Metoyer; so that the inference would be that the sale by her husband to Vilfried Metoyer and by the latter to her were shams for covering a transfer by her husband to her.
Rita, Edgar, and Edward Metoyer still' own the property thus partitioned to them. In the brief of plaintiff and in the petition, it is said that Edgar and Edward have sold their shares to Mrs.' St. Ville, and that the latter has sold same to her son, defendant herein, Felix St. Ville; but the transcript does not show these sales. Ernest Metoyer sold his part to the defendant Simon Cohn.
Vilfried Metoyer, about two years after the sale by Mrs. St. Ville to him, retransferred the property to Mrs. St. Ville.
In three separate acts, one of date July 21, 1903, and two of date December 28, 1905, Mrs. St. Ville declared that she executed her notes to her own order and indorsed in blank (describing the notes), and that to secure the payment of these notes she mortgaged the said property in favor of the future holder and holders of said notes. These notes passed to the defendant Philip Rosenthal. Whether before or after maturity, the transcript does not show.
It is alleged in the petition, and stated in the brief of plaintiff, that Mrs. St. Ville subsequently sold the said property to her son Felix St. Ville; but the transcript does not show it. However, it may be that said sale would have appeared by an act of sale — Juliette St. Ville to Felix St. Ville, recorded in Book 124, at page 434 — which was offered in evidence, but has not been included in the transcript; and, since the point is not contested, we will assume the fact to be as stated.
Counsel, in offering in evidence the several acts hereinabove mentioned, all of which are in authentic form, state that they were recorded, and mention the book and page where recorded; but the acts as appearing in the transcript are not accompanied by a certificate of their having been recorded. It is not contended, however, that they were not duly recorded at their respective dates; hence we will assume that they were.
Plaintiff is over 80 years old. We gather that she and her children and grandchildren have all along lived on the property, and continue to do so; they taking care of her.
Some of the defenses are common to all the defendants. The first is that the said tract of land is not shown to have been ac *65 quired during the marriage of the plaintiff with her late husband, and hence is not shown to have been community property.
The answer of Cohn expressly admits that it was so acquired; and none of the answers of the several defendants denies specially that it was; and the case does not appear to have been tried on that issue, which is not even alluded to by the learned judge ad hoc in his very full and carefully considered reasons for judgment. Counsel for plaintiff say that the point was not supposed to be contested. As a matter of fact, the date of the plaintiff’s marriage with her late husband has not been proved; and hence, in the present condition of the evidence, it is not possible to know whether the property was acquired before or after the marriage. But, under the circumstances, the court feels safe in acting upon the presumption established by article 2405, Civ. Code, to the effect that all property possessed by either spouse at the dissolution of the community is presumed to belong to the community.
In the event that the plaintiff should'be held to have been the owner of the property, defendants next contend that the instrument hereinbefore transcribed does not evidence a donation, but an act of partition such as ascendants are authorized by article 1724, Civ. Code, to make among their descendants.
But what if this were true? Partitions of that kind are donations, “subject to all the formalities and conditions of donations inter vivos.” Article 1726. Marcade on Article 1076. C. N. Such being the case, the legal situation stands exactly as'if the said act were a donation in form, as it is in substance and effect.
The evidence leaving no doubt that the plaintiff divested herself of all her property by said act, reserving none for her subsistence, the act is null. Ackerman v. Larner, 116 La. 102, 40 South. 581. And the obligation of support stipulated in the act does not cure the nullity. Lagrange v. Barre, 11 Rob. 302; Bourgeat v. Dumoulin, 12 La. Ann. 204; Beaulieu v. Monin, 50 La. Ann. 732, 23 South. 937; Harris v. Wafer, 113 La. 823, 37 South. 768.
Cohn and Rosenthal set up, however, the defense that they dealt with the record owners of the property in good faith relying upon the public records, and that they are 'thereby protected. They have testified to their good faith, and there is nothing to the contrary. The name of plaintiff appeared nowhere on the records in connection with the title to the property. The title stood of record in the name of her late husband, and her marriage with him did not show on the public records. The act which is sought to be annulled in this case as a donation does not appear on its face to possess that character. On its face, it is a partition between Charles F. Metoyer and 'his sister. It was no more calculated to put innocent third persons on their guard against defects in the title than would have been a donation in the form of a sham sale. And we do not imagine any one would say that a donation in the form of a sham sale could be annulled to the detriment of innocent third persons who had dealt with the property on the faith of the public records. Plaintiff can derive no comfort from the decision in Beaulieu v. Monin, 50 La. Ann. 732, 23 South. 937, because, there, “the title from the mother, violating a prohibitory law, carried its nullity on its face.” That innocent third persons when dealing on the faith of the public records are protected, see Bordelon v. Gumber, 118 La. 645, 43 South. 264. Were plaintiff enforcing her community rights, different principles would apply. But she is not doing so. She. admits that by said act she transferred her community interest to her children. Only she contends that the act of transfer is null. It is null as to the parties to it, but not as to third persons who have *67 acted on the faith of the public records. In the case last cited, the property of the wife had been transferred to the husband in violation of a prohibitory law; yet innocent third persons dealing with the property on the faith of the public records were held to be protected.
The other defendants are all of the family, and do not pretend to have acquired in ignorance of the true condition of things.
Plaintiff accompanied her suit by injunction of the executory process sued out by Rosenthal on his mortgage. The mortgage being held to be valid, the injunction must be dissolved.
It is ordered, adjudged, and decreed that the judgment appealed from be set aside in so far as it is against Simon Cohn and Philip Rosenthal, and in so far as it maintains the injunction herein sued out; that plaintiff’s suit be dismissed as against said Simon Cohn and Philip Rosenthal; that the injunction herein sued out be dissolved; that said judgment be in all other respects affirmed, except that the property subject to the mortgage of Rosenthal shall revert to the plaintiff burdened with the said mortgage. Plaintiff to pay the costs of this appeal; and defendants, except Simon Cohn and Philip Rosenthal, to pay the costs of the lower court.