(56 South. 615.)

No. 18,656.

JACO et al. v. JACO.

(Nov. 13, 1911.)

*(Syllabus by the Court.)*

1. FRAUDULENT CONVEYANCES (§ 271*)—SIMULATION — REMEDIES OF CREDITORS — EVIDENCE.

The prima facie presumption of simulation in the matter of the conveyance of real estate arising from the nonpayment of a recited cash consideration, and the continuance in possession of the grantor, may be destroyed by proof showing the reality of such conveyance.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 796–798; Dec. Dig. § 271.*]

2. FRAUDULENT CONVEYANCES (§ 291*)—REMEDIES OF CREDITORS—EVIDENCE.

An attack upon a conveyance of real estate on the ground that the cash mentioned in the deed as part of the consideration was not paid may be met by proof that an obligation assumed by the grantee was the real consideration, and that it has been fully discharged.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Dec. Dig. § 291.*]

3. DONATIONS—VALIDITY — RESERVATION OF AMOUNT NECESSARY FOR SUBSISTENCE.

An understanding upon the basis of which a widow in community owning an undivided half interest, and enjoying the usufruct of the other half interest, in four lots of ground, constituting the joint estate of herself and her two children, is to devest herself of her entire interest in all of the lots and the two children are to become the owners each of two of said lots, in consideration of the obligation assumed by one of the children to assure his mother a home in the house in which they had been living on one of the lots, free of rent, charges, and taxes, falls under the ban of C. C. 1497, and the jurisprudence interpreting that article, and will not be sustained or enforced.

[Ed. Note.—For other cases, see Gifts, Dec. Dig. § 6.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Suit by Dorothea Jaco and another against Abraham Jaco. From a judgment for plaintiffs, defendant appeals. Affirmed.

Edward A. Parsons, for appellant. Benj. Rice Forman, for appellees.

Statement of the Case.

MONROE, J. This is suit by the mother and sister of the defendant to set aside a conveyance made by them to him in 1895 of their interest in certain property which they had held in indivision, and to have said property with some other sold to effect a partition. The facts disclosed by the record are as follows: In 1872 Mrs. Jaco (the mother) acquired in her name, but in behalf of the community existing between her and her husband, lots 19, 20, 21, and 22 in a certain square in this city, lot 22 forming the corner of what are now called Spruce and Fern streets, and having on it a house of small value, but in which the family appear to have lived, and each of the lots having a frontage of 30 feet on Fern street by a depth of 120 feet. The husband and father died in 1876, leaving only the two children now before the court as the issue of his marriage, and they and their mother thus became the owners in indivision of the property in question in the proportions of one-half to the mother and one-fourth to each of the children, subject to their mother's right of usufruct. In January, 1893, the mother and son conveyed their interests in lot 19 (which is farthest removed from the corner) to the daughter, for a recited consideration of $30, but in reality there was no money paid. In May, 1895, the mother and daughter conveyed their interests in lots 22 and 21 to the son for a recited consideration of $200, no part of which was paid, but subject to the condition expressed in the act of conveyance, to wit:

"This sale is made under the express condition and reservation of home and habitation in favor of Dorothea Kissi, widow of Alexis Jaco, of living and residing on the premises and in the house standing on said lots of ground, during her natural life, free from rent, charges, or taxes."

Which condition has been fully complied with.

The $200 mentioned in the act of conveyance were, perhaps, as much as the two lots were then worth; the witnesses variously valuing them at $100 and $150 per lot. The daughter built a small house on lot 19 at a

cost she says of $39.30, and appears to have made her home there with her husband. The son shortly after the conveyance to him built a house on lot 21, in which he has since lived, at a cost which is not definitely proved, but which must have been several hundreds of dollars, as the man who built it, and who is a builder by trade, testified that it would cost $900 to duplicate it at this time; there having been considerable increase in the value of building material. The mother has continued to live, and still lives, in the house on lot 22, and, as small as it is, at times rents out a part of it, and the son has paid all the taxes on both lots, together with other expenses and charges, including the cost of keeping the house on lot 22 in repair, that of laying banquettes on both streets, and $347.81 for the paving, with asphalt, of Spruce street. As a result of the general increase in the value of property in that part of the city, and of the paving of Spruce street, it appears that the property in question would now sell for a better price than it would have done in 1895, and that, if taken as a whole and so divided as to give each of the four lots a frontage on the paved street, instead of on Fern street, it would sell for more than as now divided. The evidence also shows that the houses add nothing to the selling value of the lots, which are said to be about $900 each, if sold in the manner suggested.

The object of this suit, as we have stated, is to set aside the conveyance to the defendant, return all four of the lots to the ownership in indivision of the litigants, give them each a frontage on Spruce street, and then sell them to effect a partition, and, to that end, the daughter, who joins her mother as plaintiff, offers to cancel the conveyance to her of lot 19. The cause of action, as set up in the petition, is as follows:

"That during the lifetime of Alexis Jaco he built a comfortable house on lot 22, and the other three lots have no houses on them, and lots 22 and 21 on May 6, 1895, were well worth the sum of $2,000. On May 6, 1895, being illiterate and ignorant of the effect thereof, petitioners were deceived by the fraud of Abraham Jaco, and were induced by him to affix their cross-marks to an act * * * by which it appears that for the price of $200 your petitioners sold and transferred to said Abraham Jaco three-fourths interest in said lots 21 and 22, with reservation to said Dorothea Kissi, widow of Alexis Jaco, of the right of possession, home, and habitation; that no delivery was ever made to said Abraham Jaco, no price was ever paid by him to either of your petitioners. Said act should be rescinded for the nonpayment of the price. The price named was out of all proportion to the value of the property; and, if said act be considered a donation disguised, it exceeds the disposable portion; and petitioners have no other property than their interest in the above described four lots, and they hereby revoke the said act of May 6, 1895, purporting to sell said three-fourths of lots 21 and 22 to Abraham Jaco; and since the seller retains possession by precarious title the said sale is presumed simulated."

Hardly any of the allegations thus quoted are sustained by the evidence, from which it appears that the mother and son are illiterate and affixed their marks to the act of conveyance, but that the daughter, who is older than the son, is able to write, and wrote her signature to said act; that, so far from there having been any fraud or deceit practiced or inducement offered by defendant, the idea of the conveyance to him originated with the plaintiffs, and that he went with them to the office of the notary and made himself a party to the act in question because his mother requested him so to do; that he built his house on lot 21, and has been in possession of said house and lot ever since, and has paid the taxes, expenses, and charges on both lots whilst his mother has continued to occupy the house on lot 22, all as heretofore stated, and that the two lots, 21 and 22, were not worth $2,000 in 1895, but were worth $200, or, at most, $300. It further appears that it was part of the understanding at the time that lot 20, as well as lot 19, should be conveyed to the sister, and that defendant has always been willing, and is now willing, to join in such conveyance, and, as we understand, at one

time went to a notary's office for that purpose, but did not sign for the reason which he gives as follows:

"I refused to sign for the other lot on this condition. She wanted me to sign for that other lot, and she didn't want her husband to have anything to do with it, and I was afraid I would get in contact with the court. I didn't think I would be doing right. * * * Q. Were you always willing to transfer the other lot to her at any time if her husband was present? A. Yes, sir."

There was judgment in the district court setting aside the conveyances to the defendant and his sister, holding the entire property to belong to the litigants, in indivision, ordering it to be sold to effect a partition, and containing certain other dispositions, from which judgment defendant alone has appealed.

## Opinion.

[1] The uncontradicted testimony of the defendant as to the circumstances under which the conveyance here attacked was made, and the facts that there was another consideration besides the $200, and that defendant went into possession of one of the lots, built a house on it, and lived there as owner for 15 years, destroys any prima facie presumption of simulation arising from the nonpayment of the $200 and from the continued possession, according to the terms of the contract, of defendant's mother. Parker v. Talbot, 37 La. Ann. 22. [2] The attack upon the conveyance upon the ground that no price was paid is met by the proof that the obligation of the defendant to assure his mother a home in the house on lot 22, free of rent, charges, and taxes (which was the real consideration of the contract), has been fully discharged. [3] The objection that defendant's mother in making the conveyance did not reserve to herself enough for her subsistence appears to us, however, to be fatal to the entire transaction. According to defendant's version of the matter, which we believe to be the correct one, the understand-

ing between his mother, his sister, and himself was that he was to become the owner of two of the lots, constituting their joint estate, his sister was to become the owner of the remaining two lots, and that all that was to be left to the mother, who owned an undivided half interest in all of the lots, and had the usufruct for life of the remaining half interest, was the right to live in the house on lot 22 during her life, free of rent, charges, and taxes; and it is upon the enforcement of that understanding that defendant relies for the maintenance of his defense. We are of opinion that it falls under the ban of C. C. 1497, and the jurisprudence interpreting and applying that article. Lagrange v. Barre and Others, 11 Rob. 302; Beaulieu v. Monin, 50 La. Ann. 732, 23 South. 937; Harris v. Wafer, 113 La. 822, 37 South. 768; Ackerman v. Larner, 116 La. 102, 40 South. 581; Rocques v. Freeman, 125 La. 61, 51 South. 68. It may be said that the rule thus applied has no application to defendant's sister, who for her one-fourth interest in lots 21 and 22 was to receive defendant's one-fourth interest in lot 19 and 20; and that would be true, were it not that the sister was also to receive her mother's one-half interest in lots 21 and 22, which, for the reason stated, she cannot be allowed to take. We therefore conclude that the whole transaction must be set aside. The defendant has, however, acted in good faith in the matter and should be protected, so far as it may be possible to protect him; the case as to him being one of hardship.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reserving to defendant the right to recover, in addition to the $347.81, with interest, and the $66.66, allowed by said judgment, such further sums and interest as he may have expended, incurred, or lost on account of, or in consequence of, the transaction which is here attacked; that it be further amended by directing that all costs of

the district court, save those incurred for the taking of oral testimony, be paid by the mass; and, as thus amended, that said judgment be affirmed, the plaintiffs to pay the costs of the appeal.