No. 2240.
Second Circuit Appeal.

ELIZA TUCKER v. AUBREY ANGELL & DELIA FREEMAN, Intervenor

(February 3, 1925, Opinion and Decree)
(March 30, 1925, Rehearing Refused)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Donations—Par. 20; Sales—Par. 3.

A contract of sale showing "$10.00 cash consideration and for the service and care and attention rendered the grantor herein in her affliction and helplessness and for other good and valid considerations", cannot be declared null under Article 1497 of the Civil Code as a donation of all the property which the grantor owns.

2. Louisiana Digest—Donations—Par. 20; Sales—Par. 3.

A contract of sale showing $650.00 cash consideration cannot be declared null under Article 1497 of the Civil Code as a donation of all the property which the grantor owns.

3. Louisiana Digest—Registry—Par. 7, 12; Fraudulent Conveyances—Par. 31; Evidence—Par. 31.

Third parties have the right to rely upon the verity of the public records; therefore, there must be very strong proof to impugn the good faith of one who buys from the record owner.

4. Louisiana Digest—Appeal—Par. 625.

The finding of the trial judge that there was not sufficient proof of fraud or simulation in a sale of real property to declare it null, being manifestly correct, is affirmed.

5. Louisiana Digest—Fraudulent Conveyances—Par. 126.

Under Civil Code, Articles 2480 and 1921, continued possession by the grantor creates a presumption of simulation and throws on the grantee the burden of proving the reality of the transfer, but the cited articles show on their faces that this rule does not apply to

the parties to the contract as between whom the act makes full proof.

**6. Louisiana Digest—Marriages—Par. 5.**
Where the only proof of an alleged slave marriage is one witness who could not have been over sixteen years of age at the time the marriage took place and could not remember the county or county seat of the marriage or how long they lived together after emancipation, or the parties of other slave marriages, the marriage will not be considered proven.

Appeal from the parish of Caddo. Hon. T. F. Bell, Judge.

This is a suit to annul two acts of sale.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

John Files, of Shreveport, attorney for plaintiff, appellant.

W. A. Mabry and Lewell C. Butler, of Shreveport, attorneys for defendant, appellee.

H. B. Barrett, of Shreveport, attorney for intervenor.

OPINION

CARVER, J. Eliza Tucker, original plaintiff herein, sued to annul two acts whereby she apparently conveyed to Mattie Smith, her granddaughter, three lots in the city of Shreveport, described as lots 1, 2 and 3 of block 10 of ten-acre lot 7 of Allendale subdivision.

She brings the suit not only against Mattie Smith but also against J. T. Broghan, Lucie Land, Annie Hampton, Mattie Nelson and Aubrey Angell; Broghan, Angell, Annie Hampton and Mattie Nelson being the present claimants of the respective lots under the deeds to Mattie Smith; Broghan and Angell claiming one lot each and Annie Hampton and Mattie Nelson claiming the remaining lot; and Lucy Land having bought from Mattie

Smith and sold to Broghan the lot, claimed by him. Hon. E. P. Mills, Judge.

Eliza Tucker died pending the suit, and Mary Johnson, Rosa White and Henry Smith, alleging themselves to be: Mary Johnson the grandchild, Henry Smith the great-grandchild and Rosa White the great-great-grandchild of Eliza, springing from a marriage between Eliza and one Samuel Bolden, to whom she was married before her marriage to Jefferson Tucker, were recognized as Eliza's sole heirs and substituted for her in the suit.

The lots in question were acquired in the name of Jefferson Tucker, husband of Eliza, during the marriage between them.

The plaintiff alleged original ownership in herself one-half as widow in community and the other half as sole heir of her deceased husband.

She further alleged that she had obtained judgment in the District Court of Caddo Parish, recognizing her as his sole heir.

The deeds attacked were as follows:

One dated October 5, 1916, passed before Sam W. West, a notary public, and two witnesses, covering "her one-half undivided interest" in the three lots.

The consideration in this deed is stated to be "the sum of ten dollars cash in hand paid, receipt of which is hereby acknowledged, and for the service and care and attention rendered the grantor herein in her affliction and helplessness and for other good and valid considerations."

The other deed was passed October 15, 1921, before Joseph R. Blanton, a notary public, with Mary Johnson and J. T. Broghan as the witnesses.

The consideration expressed in this deed is the sum of $650.00 "cash in hand paid, receipt of which is hereby acknowledged."

This deed has a clause in it as follows: "This is understood to be a corrective

deed of the same as given on and filed on March 24, 1917."

We do not find this deed of March 24, 1917, in the record, but its presence is not necessary to a decision.

Plaintiff alleged, substantially, that no consideration was really paid by Mattie Smith; that the deeds were really donations; that they comprehended all of her property, and were therefore void under Civil. Code 1497 which provides as follows:

"The donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole."

And that the second one was represented to her as being an act to perfect and straighten out her title.

She further alleged that the subsequent deeds forming the muniments of title of the present claimants were void because simulated, or if not simulated were intended to be mortgages instead of sales.

Those deeds were as follows:

Mattie Smith to Lucy Land (not in the record but alleged in paragraph 8 of plaintiff's petition), covering lot 3 for a recited consideration of $500.00.

Lucy Land to J. T. Broghan, October 15, 1921, covering lot 3 for a recited consideration of $466.00 cash.

J. T. Broghan to Lucy Land, Annie Hampton and Mattie Nelson, March 2, 1922, covering lot 3 for a recited consideration of $548.53, represented by seven mortgage notes.

The petition alleges that these notes were sold to Aubrey Angell and that he foreclosed the mortgage and bought in lot 3 at sheriff's sale.

Mattie Smith to J. T. Broghan, December 16, 1921, covering lots 1 and 2, for a consideration of $1400.00, $500.00 of which was cash and $900.00 a six months' note.

J. T. Broghan to Annie Hampton and Mattie Nelson, stated in the deed to be the sole heirs of Jefferson Tucker, lot 2 for a recited consideration of $655.00 cash.

Interrogatories on facts and articles were propounded by plaintiff to all the defendants.

Lucy Land and Mattie Smith answered the interrogatories on the same day, before the same notary, and in precisely the same language; their answers being practically a confession of the truth of plaintiff's allegations.

Angell filed answers to the interrogatories as well as an answer to the suit, denying the material allegations of plaintiff's petition, pleading good faith, ignorance of any equities in plaintiff's favor, and reliance on the public records.

Broghan answered the suit, making the same defense as Angell did, but we do not find that he answered the interrogatories on facts and articles, nor do we find any motion to take the same as confessed.

We do not find in the record any exception or answer on the part of Mattie Nelson or Annie Hampton to the plaintiff's petition, but the extract from the court minutes shows the following:

October 6, 1923. Exception of no cause or right of action filed on behalf of Annie Hampton and Mattie Nelson.

April 2, 1924. For reasons orally assigned, it is held that the exception of no cause of action did not join the issue, and as to these defendants the suit should be dismissed as having been abated, and it is so ordered.

Delia Freeman filed an intervention in the suit claiming an undivided half interest in the three lots and alleging that she was Jefferson Tucker's sole heir, being his child by a previous marriage with Ellen Moore.

: On exception of vagueness being made, she filed a supplemental petition alleging that the marriage of Jefferson Tucker and Ellen Moore took place in the parish of Caddo in or about 1860, during slavery times, and that the parties continued to live together for several years after abolition of slavery.

Plaintiff's counsel cites:

Rocques vs. Freeman, 125 La. 60; 51 South. 68.

Harris vs. Wafer, 113 La. 22; 37 South. 768.

Lagrange vs. Barr, 11 Rob. 302.

Jaco vs. Jaco, 129 La. 621; 56 South. 615.

Which decisions establish the doctrine that where a donor divests himself of all his property the donation is null and is not saved because of any understanding or obligation of the donee to support the donor.

We think these decisions correctly interpret Civil Code 1497 but find them without application in this case.

In those cases the contracts attacked showed on their faces that they were donations, although carrying obligations to support.

: In this case the contracts are not donations, at least on their faces, the stated consideration in the last one being, as said above, $650.00 cash, and that stated in the first one being $10.00 cash "and for the service and care and attention rendered the grantor herein in her affliction and helplessness and for other good and valid considerations."

The granting clause of the deed did not say it was a donation but uses the terms "grant, bargain, sell, convey and deliver with full guarantee of title."

The service and attention mentioned in the deed did not purport to be such as were to be rendered but such as had been rendered.

Again, besides the $10.00 cash and the service, the deed stated that there were other good and valid considerations.

Of course, as to Mattie Smith, the immediate grantee, this contract could be annulled on her confessing in answer to interrogatories on facts and articles that it was a disguised donation of all of donor's property; but it could not be annulled as against one who bought from the donee in good faith, reliance on the public records, and in ignorance of the fact that it was a disguised donation comprehending all of the donor's property.

We have carefully read the oral testimony but do not find in it any reason to question the good faith of Broghan in acquiring the property. He first acquired lot 3 from Lucy Land, to whom Mattie Smith had sold it. It was about to be sold at sheriff's sale when Lucy Land appealed to him to rescue it. He employed an attorney to look up the title and the attorney reported that Eliza Tucker appeared to have an interest in it; so the parties met on October 15, 1921, on which day Eliza Tucker executed the second contract attacked reciting $650.00 cash and on the same day Broghan bought from Lucy Land lot 3. Broghan frankly admits that his understanding with Lucy was to give her a chance to redeem Lucy was to give her a chance to redeem this lot, and, as we appreciate the evidence, he did subsequently carry out this agreement, except that instead of conveying it to her alone he conveyed in one deed one-half of it to her and the other half to Mattie Nelson and Annie Hampton, these latter having set up claims to all three lots as heirs of Jefferson Tucker. This deed was executed March 2, 1922, and the notes received by Broghan as the consideration of the sale were those afterwards fore-

closed on by Angell, to whom Broghan had sold them.

After Broghan acquired lot 3 in the manner above mentioned, he bought from Mattie Smith lots 1 and 2. Both he and Mattie testified that he really paid the consideration expressed in the deed, namely: $500.00 cash and a six months' note for $900.00.

Mattie does not claim in her testimony that any right of redemption was stipulated as to these lots or that the deed was intended as a mortgage.

Besides conveying to Annie Hampton and Mattie Nelson a half interest in lot 3 Broghan conveyed to them by another deed passed the same day lot 2, the recited consideration being $655.00 cash; but as we appreciate the evidence, these two conveyances to Mattie Nelson and Annie Hampton were really in settlement of the half interest which they claimed in all three lots as the sole heirs of Jefferson Tucker. She and Lucy so claim in their answers on facts and articles, but these are not admissible as against the other defendants.

Counsel for plaintiff claims that Broghan was aware that the transfers from Eliza were without consideration, because he was the merchant and confidential agent of the parties, his attorney having ascertained on investigating the title to lot 3 that Eliza had an interest in the property; that he was an attesting witness consideration recited in that deed; and that he did not disturb her in her possession of it.

The proof does not, in our opinion, show that he occupied any confidential relation towards Eliza, whom he scarcely knew. That he left her in possession of lot 3, which was the only one improved, it having a little shack on it, was consistent with his admission that the transaction between him and Lucy Land, her granddaughter, with whom she lived, was a purchase with right of redemption—practically a security contract.

Blanton, his attorney, testified that he understood the consideration expressed in the second deed had already been paid in the first deed. Mattie does not state that she told Broghan she had not paid for the property. When asked whether she had told Broghan whether she had paid Eliza for the property or not, her reply was, "he did not ask me."

Eliza was very old and quite feeble but could get around without assistance, and, while hard of hearing, was not entirely deaf, and while her vision was impaired, she was not blind, and there is no pretense that she was not sane.

Blanton did not remember why it was necessary for Eliza to sign the second deed to Mattie, but evidently it was because the first deed covered only an undivided half interest in the lots. There is no proof that either he or his principal, Broghan, misrepresented anything to Eliza. In all likelihood the first deed to Mattie covered only one-half the property, because at that time Eliza only claimed one-half, knowing that Jefferson had left one or more heirs who inherited his half. There is no proof that anyone misrepresented the matter to Eliza in order to obtain her signature to the second deed; but if Mattie or Lucy did so it could not affect Broghan or Angell, who are not shown to have been aware of it.

The proof does not show what relationship existed between Annie Hampton and Mattie Nelson and Jefferson Tucker, or, indeed, whether any existed. On their asserting claims to the property Broghan made no resistance but conveyed to them lot 2 and a half interest in lot 3, evidently in settlement of their claims. Mattie

Smith and Lucy Land say in their answers on facts and articles that they claimed to be respectively the niece and sister of Jefferson.

From the following questions propounded to Broghan on trial, namely (page 44):

"Now, then, Mr. Broghan, after you acquired title to this property, I will ask you whether or not any demand was made upon you by Attorneys Fisher and Walker for a half interest in it claimed by the descendants of Jeff Tucker?"

It would seem that the attorney propounding it considered that the claimants (evidently Annie Hampton and Mattie Nelson) were Jeff Tucker's descendants. Broghan's reply does not show whether they claimed to be such descendants or not. If they were his heirs, whether descendants or not, of course Eliza never did have but a half interest in the property.

As to lot 3, now claimed by Angell, there is no evidence whatever to impugn his good faith or to deprive him of the benefit of the well-settled principle that parties have a right to rely upon the verity of the public records.

As to lot 2, claimed by Annie Hampton and Mattie Nelson, it is very likely that they were entitled to a half interest in all the property as heirs of Jefferson Tucker, and if this be the case that would give them a strong equity in the premises. But whether heirs or not, on their assertion of ownership Broghan conveyed to them this lot in partial satisfaction of their claims, and there is no proof tending to show that they were acquainted with the alleged rights of Eliza Tucker.

As to lot 1, still claimed by Broghan, we do not think the proof sufficient to impugn his good faith.

Lot 1 and 2 were not sold with right of redemption, and the proof shows that Annie Hampton and Mattie Nelson took possession of lot 2 under their deed. Lot 1 being vacant, Broghan had no occasion to take actual possession of it.

Were the proof of fraud or simulation much stronger than it is, we would not be justified in reversing the District Judge on this question of fact; but careful consideration of the testimony satisfies us that he decided correctly on this question.

Counsel for plaintiff cites Civil Code 2480 (2456) and Civil Code 1921 (1915) and various decisions in support of the proposition that continued possession by the grantor creates a presumption of simulation and throws on the grantee the burden of proving the reality of the transfer. But the cited articles show on their faces that this rule does not apply to the parties to the contract as between whom the act makes full proof, and it is so distinctly held in Bundy vs. Greene, 45 La. Ann. 403, 12 South. 759.

A. M. Brown, a colored preacher, testified that he was present at the marriage between Jefferson Tucker and Ellen Moore, which, he says, occurred on Judge T. T. Land's plantation in Mississippi two or three years before the war, and that the marriage was performed with a Bible by a negro preacher named Robert Land whom Judge Land kept on the plantation for the purpose of marrying his slaves. Brown was unable to fix the date very definitely or to state the county where it occurred or the name of the county seat; nor could he name any other slaves he saw married. At the time of testifying, in 1924, he stated he was 79 years old. This would fix the date of his birth as 1845. He states that he came to this "country (meaning, presumably, Louisiana) before the war". He further states that Jefferson and Ellen lived together for two or three years after the surrender and that they had one child, Delia, but no other.

Intervenor complains that the District Judge did not accept Brown's testimony as

to the marriage, arguing that it is not reasonable to expect two eye witnesses to be found to a slave marriage in another state before the war. We would not wish to commit ourselves to the proposition that a slave marriage could not be proven by the testimony of one witness, if such testimony were unsuspicious and consistent with the other facts of the particular case; but in view of the many circumstances of this case casting doubt on the theory that Delia was the sole child of a real marriage between Jefferson Tucker and Ellen Moore, we are not prepared to say that the District Judge manifestly erred in refusing to accept Brown's testimony as conclusive. Amongst such circumstances are these: That there is no proof, except that of Brown, that Jefferson and Ellen lived together after the surrender, and even according to Brown's testimony they so lived only two or three years; that Jefferson married Eliza; that Delia did not assert her claims until November 30, 1923, although Eliza had filed this suit August 29, 1923, claiming the entire ownership of the lots, and had before that obtained a judgment in the District Court recognizing her as the sole heir of Jefferson; that Annie Hampton and Mattie Nelson asserted and obtained in March, 1922, a half interest in the property on the assertion that they were his sole heirs and probably the assertion that they were his descendants; that Brown could not have been over 16 years of age at the time of the alleged marriage and may have been considerably younger; and that he could not remember the county or county seat of the marriage or the parties to other slave marriages.

Intervenor's alleged reason for not putting in her claim earlier is not well founded. Eliza was not entitled to the usufruct of Delia's half interest in the property, if she had such interest, she not being Eliza's child, but, according to her theory, Jefferson's child by a previous marriage.

The decision of the lower court was against the plaintiffs and in favor of defendants, and we think that decision correct. It is therefore affirmed.

---

## ON APPLICATION FOR REHEARING

REYNOLDS, J. Both attorneys for plaintiff and attorney for intervenor have filed application for rehearing. But they have submitted no additional authorities nor have they given any additional reasons than those submitted in their original briefs.

The judgment heretofore rendered herein, in our opinion, is correct, and therefore the application for a rehearing is refused.