No. 2343

Second Circuit

---

FORTSON v. MOSEKE

Spears, et als., Intervenors

---

(November 10, 1927. Opinion and Decree.)

---

*(Syllabus by the Editor)*

1. **Louisiana Digest—Marriage—Par. 159.**
In view of Articles 2399, 2402 and 2405 of the Civil Code, property acquired during the marriage in the name of the wife and being possessed by her at the time of the dissolution of the marriage is presumed to be community property.

2. **Louisiana Digest—Marriage—Par. 159.**
The presumption that property purchased in the name of the wife belongs to the community can only be destroyed by conclusive proof that the wife had paraphernal property with which to make the initial payment, had the management of the property after she acquired it and had sufficient revenues from paraphernal property to take care of the deferred payments.

Appeal from the Second Judicial District of Louisiana, Parish of Claiborne. Hon. John S. Richardson, Judge.

Action by Charles S. Fortson against John H. Moseke, Mattie Spears, et als., Intervenors.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

William C. Boone, of Homer, and Atkins, Meadors & Madden, attorneys for plaintiff, appellee.

W. H. Hawkins, T. T. Land, of Homer, attorneys for intervenors, appellants.

ODOM, J. On April 7, 1920, the defendant, J. H. Moseke, executed his promissory note for $265.07 due November 15 following, payable to J. T. Ramsey and secured the same by mortgage on an undivided one-half interest on the southwest quarter of Section thirty-two, Township twenty-two north, Range six west in Claiborne parish, Louisiana, containing 160 acres.

Alleging ownership of the note and that the same had not been paid the plaintiff, Fortson, took out executory process to collect the same on October 21, 1924. The land mortgaged was seized and advertised to be sold on January 31, 1925. On January 30, 1925, the day previous to the one on which the sale was to take place, J. H. Moseke, the maker of the note and defendant in the foreclosure suit, in his capacity as tutor of the minors, Booker T. and James Douglas Carter, and Mattie Spear, born Mozeke, intervened in the foreclosure suit, set up the facts of the seizure and proposed sale of an undivided half interest in said land and alleged that the one-half interest in the property above described which had been mortgaged by J. H. Moseke was not in fact owned by him but belonged in indivision to the heirs of Rhoda Moseke (naming them).

Rhoda Moseke was the wife of J. H. Moseke and the property in controversy in this suit was acquired during their marriage, the deed being taken in the name of Rhoda Moseke, the wife.

It is alleged:

"That said Rhoda Moseke acquired said lands by purchase from A. T. Nelson by deed dated January 15, 1913, recorded on page 567, Book Z, of the conveyance records of Claiborne parish, and paid for said lands with moneys from her paraphernal property."

And it is further alleged that the mortgage to secure the note sued on was executed by said J. H. Moseke—

"in the belief that he owned an undivided one-half interest in said lands, whereas, in truth and in fact, as he is now advised, he had no interest therein, as said lands were the separate property of his wife, Rhoda Moseke, and, on her death, descended to her children."

Intervenors prayed for an injunction restraining the sale of the property and for judgment recognizing the heirs of Rhoda Moseke as owners of the entire interest in said 160 acres of land.

After the trial the court dissolved the writ of injunction and decreed that the property purchased in the name of Rhoda Moseke on January 15, 1913, during her marriage with J. A. Moseke, was community property. Intervenors prosecute this appeal.

## OPINION

J. H. Moseke and Rhoda Moseke were husband and wife at the time this property was acquired. It seems to be conceded that they were living together in community. The property was acquired in the wife's name. The deed recites that it is sold—

"unto Rhoda Moseke, nee Jackson, whose husband, J. H. Moseke, signs this deed to aid, assist and authorize his said wife to make this purchase."

There is no recital in the deed that the land is purchased with paraphernal funds of the wife or that the same is not to fall into the community acquets and gains existing between her and her husband.

The consideration of the sale, as shown by the deed, was $1100.00, $400.00 being paid in cash and the balance represented by four notes each for $175.00 payable December 15 in the years 1913, 1914, 1915 and 1916.

The note maturing December 15, 1913, seems to have been paid promptly. Its cancellation was noted on the mortgage record by the clerk and recorder on that date. The other three notes were presented for cancellation on November 29, 1919, and the recorder cancelled the mortgage in full on that date. The record does not disclose whether they were paid on that date or prior thereto. Rhoda Moseke died shortly thereafter.

The property having been acquired during the marriage in the name of the wife and being possessed by her at the time of the dissolution of the marriage is "presumed common effects or gains".

Civil Code, 2399, 2402, 2405.

Bachino vs. Costs, 35 La. Ann. 570.

Rocques vs. Freeman, 125 La. 65, 51 So. 68.

Bartels vs. Souchon, 48 La. Ann. 785, 19 So. 941.

This property *prima facie* belongs to the community and must be considered as belonging to the community—

"until the presumption has been effectually destroyed by conclusive proof of the claim of separate ownership to it."

Bachino vs. Costs, *supra*.

Citing:

Collins vs. Daly, 4 Rob. 118.

Smalley vs. Lawrence, 9 Rob. 214.

Burke vs. Clark, 11 La. 206.

Squier vs. Stockton, 5 La. Ann. 741.

Forbes vs. Forbes, 11 La. Ann. 326.

Huntington vs. Legros, 18 La. Ann. 126.

Shaw vs. Hill, 20 La. Ann. 531.

State of Louisiana ex rel. Durant vs. Board of Liquidators, 29 La. Ann. 76.

The record showing upon its face that this property is community property, the burden rested upon these intervenors, heirs of their mother, who claimed it was separate property, to prove that fact. This they have failed to do.

J. H. Mozeke, the surviving spouse, testified that the property belonged to his wife; that she had paid for it; but on being questioned as to where and how she acquired the funds with which to make the purchase, he could give no definite, satisfactory answers. He said his wife had inherited some property from her mother which she had sold, but he did not know how much she received for it, whether $10.00 or $50.00; nor did he know when she sold it, but a portion of his testimony indicates that she sold it after this purchase was made. The property which he says she sold was, he said, situated in the adjoining parish of Lincoln, but no record evidence was introduced to show that she had ever made such a sale nor that she had inherited any property in that parish. Questioned further, he said his wife acquired the money from "deals" which she made, but he was not able to specify any particular "deal" because, he said, he did not inquire into his wifes business.

His daughter, Mattie Spear, one of the intervenors, testified that her mother paid for the property with her own money; that her mother had at one time shown her some $640.00 in cash; had her count it. This was just before the property in question was purchased. But she did not know when or where her mother got the money or even that it was her own money, except what her mother told her. Her mother, she says, told her it was hers.

If it be true, as alleged by intervenors, that Rhoda Moseke had inherited property from her mother and had sold it, the records were the best evidence of that fact. These records were accessible and could have been produced. But, instead of producing them, and thereby settling the vital point at issue, the intervenors rested their case on the weakest kind of evidence, the greater portion of which was hearsay. This property being *prima facie* a community asset, the burden was on intervenors to show by *Conclusive proof* that it was the separate property of the wife. Such is our jurisprudence. . Intervenors failed to show by any substantial, much less conclusive, proof that Rhoda Moseke made with her separate paraphernal funds either the initial cash payment or any subsequent payment on the land. On the contrary, it is shown that both J. A. Moseke and his wife had taught in the colored schools of the parish, so that both together or either of them could easily have accumulated the $400.00 with which the cash payment was made.

So far as the subsequent payments are concerned, there is no testimony as to how they obtained the means of making them. But there is proof in the record that they at one time sold a mineral lease on the land and also some timber, and we think it very probable that the notes given for the credit portion of the price were paid out of the proceeds of these sales.

In addition to the above, it may be well to state that the property was never under the separate management of the wife. Mr.

George Nelson, son of the man who sold the land to Rhoda, testified that he recalled the sale by his father, and that John and Rhoda came together when the sale was made and Mr. Nelson was asked:

"Who did the talking and making of arrangements?"

And he answered:

"John did the talking; he seemed to be the speaker of the two."

And he said:

"John always came and sold the cotton; he seemed to be the manager of the outfit."

There is some testimony in the record that at one time a merchant refused to charge goods to John Mozeke but, on the contrary, charged the same to his wife, Rhoda. It is easy to imagine why this should have been done—the only property owned by either stood on the records in the name of the wife.

In the case of Fortier vs. Barry, 111 La. 778, 35 So. 900, the court said:

"The presumption of law is that property purchased during the existence of the community, whether in the name of one or the other of the spouses, belongs to the community; and where the wife claims it as her separate estate, the burden rests upon her to establish by proof *de hors* the recitals of the act by which it has been acquired; (1) the possession of some paraphernal funds under her administration, and available for investment; (2) that the cash portion of the purchase price bears such a relation to the whole as that the property will afford sufficient security for the credit portion; and (3) that her paraphernal property and revenues are ample to enable her to make the purchase with reasonable expectation of meeting the deferred payments."

In the case at bar, there is not satisfactory proof that the wife had paraphernal funds with which to make the initial payment and no proof whatever that she had the management of the property after she acquired it and no proof that she had revenues from paraphernal property sufficient to take care of the deferred payments.

For the reasons assigned the judgment appealed from is affirmed with costs.