CULPEPPER, Judge.
The plaintiffs, Julia Magee, Ruth Magee and Kathryn Magee Marshall, are elderly sisters. They seek to annul certain donations conveying all of their property to the defendants, Barbara Marshall Stacey and her husband, John Baron Stacey, who are respectively the daughter and son-in-law of Kathryn Magee Marshall. Additionally, plaintiffs demand an account by defendants of all the fruits and revenues derived by them from the property. From an adverse judgment, defendants appealed.
The issues on appeal are: (1) Defendant’s contention that due to the mental incompetence of one of the plaintiffs, Ruth Magee, she cannot “stand in judgment.” (2) Whether the action is grounded in fraud and prescribed in one year. (3) Whether the six transactions in question are donations and donations in disguise, subject to nullification as donations omnium bonorum, under LSA-C.C. Article 1497.
THE MENTAL COMPETENCY OF THE PLAINTIFF, RUTH MAGEE
During the trial, plaintiffs’ own counsel introduced the testimony of Dr. William McCray for the purpose of showing that Miss Ruth Magee was mentally incapable of testifying as a witness. The doctor stated that she is a victim of progressive senility, cannot distinguish between the truth and her own fabrications and is not competent to testify.
Defendants contend the evidence shows Ruth Magee is mentally incompetent and that under the law she does not have the capacity to stand in judgment. They cite Roe, et al. v. Caldwell, 138 La. 652, 70 So. 548; Williams v. Brown, La.App., 142 So. 2d 865, 866 and Fountain, et al. v. American Employers Insurance Company, La.App., 161 So.2d 120.
We find the cited cases readily distinguishable. In the Roe case the natural tutrix of certain minors filed suit on their behalf. After the decision, but before judgment, the tutrix died. The court held this put an end to the tutorship, left the minors unrepresented and hence no judgment could be rendered. In both the Williams and Fountain cases one of the parties died prior to judgment. The courts followed the established jurisprudence that judgment cannot be rendered for or against a deceased person.
The issue can be decided under the provisions of our Code of Civil Procedure. LSA-C.C.P. Article 684 provides: “A mental incompetent does not have the procedural capacity to sue.” Under LSA-C.C.P. Article 926, lack of procedural capacity is a dilatory exception, which is “waived unless pleaded therein.” LSA-C.C.P. Article 928 provides: “the dilatory exception shall be pleaded prior to answer or judgment by default.” (emphasis supplied) In the present case no dilatory exception was timely filed, or sought to be filed, objecting to the procedural capacity of Ruth Magee. Under the Codal provisions cited, such objections are now waived by defendants.
PRESCRIPTION
Defendants filed an exception of prescription of one year under LSA-C.C. Article 3536, based on the contention that plaintiffs’ cause of action is for fraud and *196 misrepresentation in connection with the execution of the donations and disguised donations. The answer to this contention is that plaintiffs do not rely on their allegations of fraud. They rely on LSA-C.C. Article 1497, which prohibits donations omnium bonorum. Our jurisprudence is established that such an action is imprescriptible. Lagrange v. Barré, 11 Rob. 302; Kirby v. Kirby, 176 La. 1037, 147 So. 70; Welch v. Forest Lumber Company, 151 La. 960, 92 So. 400.
NULLITY OF THE DONATIONS AND DISGUISED DONATIONS
LSA-C.C. Article 1497 reads as follows:
“The donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole.”
Many cases construing this code article hold that a person who donates all of his property and is left without sufficient income for subsistence, may annul the entire donation. Kirby v. Kirby, 176 La. 1037, 147 So. 70; Kelly v. Kelly, 131 La. 1024, 60 So. 671; Jaco v. Jaco, 129 La. 621, 56 So. 615. Even where the donation is disguised as a sale, parole evidence is admissible to show that it was actually a donation, to which LSA-C.C. Article 1497 is applicable. Ducote v. Stark, La.App., 87 So. 2d 770 (2d Cir. 1956); Lemoine v. Lemoine, La.App., 27 So.2d 650 (2d Cir. 1946); Carter v. Bolden, 13 La.App. 48, 127 So. 111.
In a well considered written opinion, the district judge stated the following facts, and conclusions therefrom, which we adopt as our own:
“Julie Magee, Ruth Magee and Kathryn Magee Marshall are sisters. Julia and Ruth were never married and Kathryn is a widow. Through inheritance and by purchases they, together with Sara Magee Scribner, another sister, were the owners in indivisión of approximately 1,400 acres of land in Vermilion Parish, Louisiana. It has been for sometime the desire of Julia, Ruth and Kathryn to keep this property in the family and in an attempt to carry out their plans, and at the same time protect their estates from excessive taxes, they decided among themselves and with Barbara Marshall Stacey, the daughter of Kathryn, a proposed plan whereby the three Magees would donate to Barbara the acreage situated in Vermilion Parish.
“Through discussions with attorneys they found that a donation of the 1,400 acres would divest them of all of their property and would be in violation of the prohibitions contained in Civil Code Article 1497. It was then decided that their plan would be carried out by a donation of a portion of the property and the remainder of the property would be given to Barbara by will. Thereafter, their plans were changed and the remainder of the property was transferred to Barbara’s husband, John Stacey, by credit sale.
“Kathryn by act of donation transferred yA of her interest in the property to her daughter on February 18, 1963. Julia and Ruth transferred to Barbara of their interests in the property on March 29, 1963.
“In March of 1964, Kathryn executed a credit sale transferring her remaining interest in the property to John Stacey for $12,843.75. Of this money $2,000.00 was to be paid in cash and the balance was represented by a vendor’s lien note in the amount of $10,843.75 to be paid in five annual installments of $2,000.00 and a final installment of $843.75. The note provided for 3% per annum interest.
“Ruth and Julia executed a credit sale transferring their remaining interests in the property to John Stacey for a purported consideration of $17,125.00 on terms of $2,000.00 cash and the balance represented by vendor’s lien notes each payable in seven annual installments of $2,000.00 each and a final installment of $1,125.00. These notes carried 3% per annum interest also.
*197 “Sometime after the sales were prepared Barbara and John Stacey acquired possession of each of the notes representing the unpaid balance on the credit sales.
“For the purposes of the credit sales from Julia, Ruth and Kathryn to John Stacey, the property was transferred for a value of $150.00 per acre. After these sales were completed, John Stacey purchased Sara Magee Scribner’s interest in the property for a price of $400.00 per acre.
“In this proceeding Julia, Ruth and Kathryn are seeking to nullify the donations and credit sales contending that the credit sales were, in fact, donations in disguise and that the donations and credit sales together divested them of all of their property in violation of Civil Code Article 1497. Their suit also contends that the donations should be set aside because of the ingratitude of Barbara and John Stacey. The plaintiffs also contend that there was a verbal reservation of usufruct by the donors in violation of Code Article 1533.
“The testimony in this case is in complete contradiction. The plaintiffs on the one hand testified that they received no consideration for the credit sales; the defendants on the other hand contending that they paid the down payments in cash prior to the execution of the sales as well as payments on the installment balances.
“The critical issue involved in this case is the question of whether John Stacey did, in fact, make any payments toward the credit sales for if it was intended that payments be made and if he, in fact, did make payments, then the credit sales could not be termed donations in disguise. On the other hand if there never was an intention to actually make the payments designated in the sales and if, in fact, no payments were made, then the transactions are actually disguised donations.
“The court after reviewing its notes has come to the conclusion that the credit sales were actually donations in disguise. The court cannot accept the testimony to the effect that the downpayments and some of the cash payments toward the notes were made by John and Barbara from moneys which they had retained and saved in their refrigerator. Their explanations surrounding the circumstances of these cash payments were insufficient.
“The payments which were noted on the reverse of the notes and were allegedly acknowledged by the vendors are likewise tainted with serious suspicion. It was shown that Barbara Stacey had joint accounts with all or some of the vendors and the court is of the opinion that the checks which the defendants allege were given in payment of the notes were actually checks representing transactions between Barbara and her mother and aunts with regard to their own business and actually dissociated from the credit sales altogether.
“The fact that Barbara and John retained possession of the promissory notes amplifies the belief that the credit sales were nothing more than disguised donations.”
On appeal defendants argue it was “unfortunate” that the sum of $2,000 paid to each of the plaintiffs prior to the execution of the credit sales in 1964, was paid in cash rather than by check. However, they say defendants’ explanation that they had saved this money in $100 bills and used it to pay the plaintiffs in cash, should be accepted. This, of course, is largely a question of the credibility of the witnesses. The plaintiffs insisted they did not receive, nor intend to receive, any consideration for these credit sales. Their testimony is corroborated by their attorney before whom the instruments were executed. The trial judge, who saw and heard the witnesses in court, believed the testimony of the plaintiffs rather than thát of the defendants. We find no manifest error in this determination.
Defendants argue strenuously that the payments indicated on the reverse side of each of the installment notes, and the checks introduced in evidence by defendants to substantiate these payments, corroborate *198 defendants’ testimony that approximately $6,500 was paid to each plaintiff on her respective installment note. The answer to this argument is the same as above. It is a question of the credibility of the witnesses. The plaintiffs steadfastly testified they never received and did not intend to receive any payments whatever on the notes. They explained that most of these checks, executed by defendants payable to plaintiffs actually represented monies withdrawn by Barbara Stacey from savings accounts, belonging to plaintiffs, over which Barbara Stacey had control. Other checks were in small amounts and had no connection with the mortgage notes. We find no manifest error in the trial judge’s acceptance of plaintiffs’ version.
Defendants also rely on the fact that plaintiffs’ income tax returns show the receipt of certain monies from the defendants in payment of the credit sales. Here also the trial judge accepted plaintiffs’ testimony that John Stacey actually controlled the preparation of these income tax returns and showed these sums as having been received by plaintiffs, although actually none whatever were received.
In summary, this voluminous record, nine volumes, contains ample evidence to support the conclusion of the trial judge that these six transactions, three donations and three credit sales, were all a part of one scheme whereby plaintiffs intended to donate all of their property to the defendants. And, no consideration whatever was intended to be paid, nor was any ever actually paid, to plaintiffs. These transactions constituted donations by plaintiffs of all of their property and are null and void under LSA-C.C. Article 1497.
The district court also ordered an accounting by defendants of all the fruits and revenues derived by them from the property. On appeal, no issue is raised by defendants as to this portion of the judgment. Hence, it is affirmed.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.