No. 406

First Circuit

---

PHILIP WERLEIN, LTD., v. MADSEN ET AL.

---

(February 13, 1929.  Opinion and Decree.)
(April 13, 1929.  Rehearing Refused.)

---

Harvey E. Ellis, of Covington, and Robt. D. Jones, of Franklinton, attorneys for plaintiff, appellee.

A. J. Finney, of Covington, attorney for defendant, appellant.

MOUTON, J.  This suit is for a balance of five hundred and ninety dollars ($590.00), on the purchase price of an electric piano bought from plaintiff. Judgment is asked against Henry C. Madsen and Albertina S. Madsen, his wife.

Mr. and Mrs. Madsen were the owners of a grocery store in St. Tammany at the time of the purchase, and of a dance hall they

were operating in connection therewith. The wife is not separate in property from her husband, and not a public merchant. Their property is all community.

Mrs. Madsen bought the piano in her name. Having, however, acquired it during marriage, and under the community regime, it became a community asset. The legal presumption which thus fixes the ownership in the conjugal partnership could be destroyed only by conclusive contrary proof. C. C. 2399, 2402, 2405; Bachino vs. Coste, 35 La. Ann. 570; Rocques vs. Freeman, 125 La. 65, 51 So. 68; Bartels vs. Souchon, 48 La. Ann. 785, 19 So. 941; Fortson vs. Moseke, 7 La. App. 131.

There is no such contrary proof herein. It is not claimed by either defendant that the piano is paraphernal or separate purchase by the wife, their contention being that plaintiff cannot recover either against the wife or the husband because she was not authorized by her husband to make the purchase. Defendants contend that the authorization of the husband is legally presumed to her commercial contracts only when she is a public merchant, or is permitted to trade in her name, and in case of his failure to provide her with the necessaries of life. The foregoing is a correct statement of the rule which governs in such cases. C. C., art. 1786.

A piano, it is true, is not one of the necessaries which a husband must provide and as Mrs. Madsen was not a public merchant, defendants say that her husband is not bound because it is contended he did not authorize his wife to buy.

Under the provisions of the article of the Code above cited, the consent of the husband to the contracts of his wife therein referred to is implied. The rule therein stated, however, is not exclusive of other means of proving the assent of a husband in creating an obligation incurred in the name of his wife. The actions of a party, also his inaction and silence, under certain circumstances, are means of showing an assent that creates an obligation. C. C., arts. 1816, 1817; Standard Mfg. Co. vs. Dupuis, 6 La. App. 476.

In testifying on the subject of her want of authorization Mrs. Madsen says, her husband knew nothing of her purchase, and he enters the same disclaimer. On being questioned on this point, she stated in an answer to her attorney that when she sold anything she was authorized by her husband. The word "anything" has a large margin, and necessarily includes things of little value. If her husband was so punctilious in that respect, it seems rather singular, and not easy of explanation that she should on her own initiative, and without his approval or even knowledge enter into a contract for the acquisition of an electric piano, and at that a second-hand instrument, for eight hundred dollars ($800.00), making a cash payment thereon of one hundred and fifty dollars ($150.00), and obligating herself individually for the balance in deferred payments. She testified that on her first visit to plaintiff's music store in New Orleans, she examined the piano but did not buy it; that she returned some few days thereafter and effected the purchase. She claims that during the interval between her two visits to plaintiff's establishment she was at the home of her mother in New Orleans. The proof is that the piano was sent to her, and was placed in the dance hall where it was operated by her and husband for the benefit of their business, and unquestionably for the benefit of the community. It was naturally impossible for plaintiff to show that Mrs. Madsen had returned home and had not consulted her husband in reference to the

purchase, but the facts and circumstances surrounding the transaction are of such a nature that undoubtedly the district judge came to the conclusion that the husband authorized the purchase, and we certainly find no ground or reason to justify a reversal of this finding. On the contrary, the motive, which prompted the defendants to buy the piano for the benefit of the business they were operating for the benefit of the community, and under the circumstances hereinabove stated, convinces us that the purchase was not only authorized by the husband impliedly, but we rather believe, expressly.

The husband, as head and master of the community, is liable for the balance on the purchase price of the piano, unless he can be exonerated under the plea of defendants that the instrument was defective.

The avoidance of a sale for redhibition, the vice or defect in the thing sold must render it absolutely useless or its use so inconvenient and imperfect, that it must be presumed the buyer would not have purchased it had he known of the vice. C. C., art. 2520.

The piano was a second-hand instrument and had been rebuilt. When Mrs. Madsen bought she knew that to be the fact.

She signed the contract for the piano, June 14, 1927, and received it on the third of July, 1927. In one part of her testimony, she says it was "never in order when we first received it." In another part of her evidence she says a couple of weeks after they had the piano it would play tunes that could not be understood. She further says that when a nickel was dropped in the piano it would not play one tune and stop, as was intended by the instrument, that as many as ten to thirty-five were turned out in succession.

Mr. Lawrason, manager of the Electric Piano Department of plaintiff's business, says that about a week after the piano was bought he visited Madsen's step-in near Covington where defendants lived. He says the instrument was out of regulation which was due to the moving of the piano to that place. In about a half hour he adjusted it, and demonstrated to defendants how it should be played.

Upon complaint that the piano was not operating as it should, Lawrason paid a second visit to defendants, several months after the first. On his second trip he found that the mechanism of the instrument had been clogged in its inner parts by the accumulation of dust or dirt. He again instructed defendants that they had to keep the piano clean and free of this dust, otherwise the instrument could not be properly operated. He also on that occasion found that the condition of the music roll was the cause of the continuous playing of the instrument, and demonstrated to them how to remedy this trouble.

Mr. Madsen admits that Lawrason told him the piano had to be cleaned when it got full of dust or dirt, but that it did not run long enough to need cleaning out. He was then asked "did you look at it to see if it needed it?" His answer to that question is as follows: "I looked at that like I look at the man in the moon." The instructions given by Lawrason were evidently not carried out, and the piano failed to operate as was expected.

There was, however, no vice or defect in the thing sold to authorize the avoidance of the sale under provisions of Civil Code, article 2520.

Mrs. Madsen says the piano failed to operate in about a couple of weeks after its purchase, if not at an earlier date.

There is, however, a letter from Mrs. Madsen to plaintiff written October 25, 1927, in answer to a demand for payment on the balance of the purchase price. This letter, it must be noted, was written more than three months after the couple of weeks after her purchase at which time, she says in her testimony that the piano would play tunes that nobody could understand, and, which was written after the time these defendants contend the instrument would play continuous tunes to the extent of thirty-five in succession. In the letter above referred to, Mrs. Madsen urges no complaint whatsoever in reference to troubles of which she now complains in her testimony. In that letter she only expresses her regret that she could not make any payment on the account, which she ascribes, as we read the letter, to no business in that line at the time. Two other letters written later, one November 21, the other November 24, 1927, show that revenues or profits could not be derived from the operation of these electric pianos in establishments of the character defendants were running, which resulted in their inability to meet installments on the contract Mrs. Madsen had signed.

In all these letters no complaints whatsoever are urged to the effect that the instrument was defective, so useless, or imperfect that can possibly lead to the conclusion that Mrs. Madsen would not have bought had she been aware thereof. These defendants simply made a mistake in acquiring the piano as a profitable business investment which we have no doubt was for the benefit of their business, a community venture for which the husband is bound.

The judgment rendered against the husband for the claim, and rejecting the demand as against the wife, is therefore correct.