## CHARLES LOB'S SONS, Limited, v. KARNOFSKY et al.*

### No. 14198.

Court of Appeal of Louisiana. Orleans.

Oct. 31, 1932.

---

Ben Washastrom, of New Orleans, for appellant.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellee.

JANVIER, J.

Plaintiff corporation, alleging that it sold and delivered certain merchandise to Mrs. Karnofsky, prays for a judgment for the unpaid balance due thereon not only against the said Mrs. Karnofsky, but also solidarily against her husband.

It is contended that there is a community of property between the said husband and the said wife; that the wife is engaged in business as a public merchant; and that for these reasons, although the said husband was not interested in the said business, his liability solidarily with his wife results from article 131 of the Civil Code. The pertinent part of this article reads as follows:

"If the wife is a public merchant, she may, without being empowered by her husband, obligate herself in anything relating to her trade; and, in such case, her husband is bound also, if there exists a community of property between them."

Mrs. Karnofsky made no defense and has not appealed from the judgment which was rendered in accordance with the prayer of the petition, but her husband resists plaintiff's demand and has appealed.

We shall hereafter refer to Mr. Karnofsky as "defendant," since he is the only party defendant with whom we are now concerned.

Complying with the prescribed practice in the First city court of New Orleans, defendant filed at the same time exceptions and an answer; the exceptions being of misjoinder and of no cause of action based on the contention that, since defendant had not authorized the purchases which his wife had made and which form the basis of the suit, he was improperly joined as a party defendant.

In the answer defendant interposes two contentions, either of which, he maintains, is sufficient to prevent his being held liable. He asserts, in the first place, that his wife is not a "public merchant," but is engaged in the tailoring business, and, in the second place, that, even if his wife's business be such as may be classified as that of a "public merchant," the said business is not conducted individually by her, but by a partnership com-

posed of her son and herself, and known as "The Model Tailors."

## On the Exceptions.

■ If the allegations of the petition be true, there is a cause of action stated under which defendant may, under the codal provision quoted, be held liable solidarily with his wife. The exceptions are not based on the charge that the petition does not contain allegations sufficient, if true, to show liability, but rather are they founded on the assertion that those allegations are untrue. The truth or falsity of allegations contained in a petition is not properly put at issue by exceptions, for, when considering the exceptions, it is to be assumed that the allegations are true.

The exceptions are not well founded and were properly overruled.

## On the Merits.

Mr. and Mrs. Karnofsky have been married for nearly forty years and during all that time have been living together under the community of acquets and gains, which exists between them.

Nearly ten years ago Mrs. Karnofsky, with the knowledge of her husband, but without his participation either then or since, established and has since operated a tailoring establishment, in which there have been manufactured and sold to customers, on order, tailor-made clothes. The business has been operated under the name "The Model Tailors" and engaged in the business with Mrs. Karnofsky is her son. Whether there is a partnership, and whether the existence of a partnership, if there is one, would affect the legal result, are matters which we shall later consider.

■■ In order to render the husband liable for the debts made by the wife engaged in business, certain requirements are set forth in our Civil Code. The first alleged requirement to which our attention is directed is that of assent on the part of the husband.

Article 131 does not state that the husband's liability for his wife's debts as a public merchant shall be in any way dependent upon his acquiescence in her venture. On the contrary, at first reading of this article, it would appear that the framers of the article, when they used the words "without being empowered by her husband," intended to declare that, all other prerequisites being shown to exist, the liability of the husband follows regardless of whether or not he has given his assent. But article 131 must be read in connection with article 1786, and from the latter article it is manifest that the husband, who, for debts made by the wife, is liable only in certain specified instances, is not responsible for debts made by the wife trading as a public merchant, unless "he permits her to trade in her own name."

A reading of the decision of our courts, and particularly of the opinion rendered by this court in Fabacher v. Rouprich, 2 La. App. 138, in which certain words which we shall hereinafter quote appear, convinces us that such assent or permission is necessary if the husband is to be held liable. The words which appear in that opinion and which we have in mind are the following:

"Not only is it necessary that the wife should be a public merchant, but she must exercise that business with the authorization of her husband. * * *"

We conclude that the authorization referred to in the above quotation is not authorization to make the particular contract sued on, but, rather, the assent or approval, or, to use the words of Civ. Code, art. 1786, the permission of the husband to the wife's entering into trade in the first instance, or to her continuing therein thereafter.

Thus, the husband whose wife is a public merchant becomes liable for debts growing out of her said trade only if it be shown that he expressly, or impliedly by tacit acquiescence, permitted her to go into the business in question, or acquiesced in her continuing in it. If such assent be shown to have been given, then he is liable for her said debts, whether he knew of and authorized any particular debt sued on or not.

That the wife can be a "public merchant" within the contemplation of Civ. Code, arts. 131 and 1786 only if she has her husband's consent is the view expressed by Mr. Joseph W. Carroll in an article entitled "The Married Women's Act" appearing in the Southern Law Quarterly (predecessor of the Tulane Law Review) vol. III, No. 1, page 6. Mr. Carroll says:

"The husband's liability for the wife's debts contracted as a public merchant rests upon the allowance by the husband of the pursuit by the wife of a separate business, and his consent implied therefrom. Not merely the right, but also the ability, of the husband to prevent the wife from embarking on such separate business, was thus conclusively assumed against him. Under Act 94 (of 1916) the wife does not need the consent of her husband in order to carry on a separate business; she may contract at will both personally and with reference to her property; she may rent a store and bind herself for a stock of goods, without her husband's consent and against his will. In fact, there is no method provided by which he can even effectively register his dissent, much less control his wife's business venture.

"Under such circumstances is the wife a 'public merchant' within the meaning of Art. 131? If so, the husband is bound for her debts as such. To conclude that the husband is bound in such a case is to concede to the wife the power by her sole will—whether as a result of bad judgment or otherwise—to im-

peril and even completely consume not merely her own separate and paraphernal property, but the community property and her husband's separate property as well. Certainly, a result so unjust to an unconsenting and protesting husband—and to the wife herself—should be avoided if by any means possible.

"A solution may be found in the definition of 'public merchant,' which is used technically in Art. 131. In strict consonance with the text of Arts. 131 and 1786, it could be rightly held that a wife is not within the definition of 'public merchant' unless she carries on a separate business *with the consent of her husband*, inasmuch as the only 'public merchant' contemplated by Art. 131 is a wife having her husband's consent. Thus would be avoided the anomalous result that a self-satisfied or reckless wife could completely ruin an unconsenting husband by an ill-advised business venture, and at the same time the existing provision of Art. 131 be left in full force as to the husband's liability when he actually consents to the wife's venture."

■ To repeat, then: The first requisite is that the husband shall have assented to the wife's entering into trade as a public merchant. The evidence shows overwhelmingly that that requirement was met here, for the husband and the wife lived together during the many years during which she conducted the business, and it is not denied that he was fully aware of the fact that she was engaged in said venture. His failure to take steps during those years to terminate the business and his failure to object constituted tacit acquiescence in her continuing in that trade.

"Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation. * * *" Civ. Code, art. 1817.

■ Another prerequisite to the husband's being held liable for such debts is that there must exist "a community of property" between them.

It is shown and not denied that Mr. and Mrs. Karnofsky, ever since their marriage, have been living under the regime of the community of acquets and gains. But counsel for defendant says that the Code, in providing for the husband's liability only if there exists a "community of property" between them, did not use the words as meaning "community of acquets and gains." He contends that the words mean that there must be a joint ownership in the property used in the business and in the profits resulting therefrom. No authority is called to our attention in support of this argument. On the contrary, we find that in Thorne et al. v. Egan, 3 Rob. 329, the Supreme Court, in discussing Civ. Code, art. 131 (then Civ. Code, art. 128) referred to the "community" as the "community of acquets and gains." We believe that the "community" referred to in the article is the usual community which is customarily intended where the words are used in this state with reference to married persons. If the word "community" referred to property used in the business, or resulting from the operation of the business, then there would have been no necessity for the statement in this article that the husband is liable for the debts created by the wife in connection with a business operated jointly by the spouses and in which the husband permits the wife to make purchases, because, if a husband and wife are engaged in business together, whether as public merchants or otherwise, then, if the husband permits the wife to make contracts connected with that business, he is liable on those contracts, whether the business be such as may be classified as that of a public merchant or otherwise. Philip Werlein, Ltd., v. Madsen, 10 La. App. 550, 120 So. 237; Motion Picture Adv. Service v. Modica et ux., 18 La. App. 647, 139 So. 80; Perfection Garment Co. v. Lanasa, 7 La. App. 31.

■ The remaining prerequisite to the husband's liability for the debts of the wife is that in creating those debts she must have been doing business as a "public merchant." Though this prerequisite is set forth in the Codal article (Civ. Code, art. 131), we have deemed it best to first discuss the others, because on the question of whether this last-mentioned requirement has in this case been met has most stress been laid both in briefs and in oral argument.

We pretermit for the moment consideration of whether a husband may, by tacit approval, become liable for business debts of a wife engaged, separate and apart from him, in business otherwise than as a public merchant, and shall later devote our attention to that question.

Counsel for defendant contends that the term "public merchant" is limited to one who buys at wholesale and sells at retail, or, at any rate, to one whose business is limited to that of buying and selling; whereas, counsel for plaintiff maintains that one who sells a finished article is included within the term, even if his own labor, skill, or artisanry change the nature or form of the raw material on which he exercised that skill, labor, or artisanry.

The distinction between a merchant and a manufacturer is set forth in Corpus Juris, vol. 38, under the title "Manufactures," § 13, p. 969, as follows:

" 'Merchant' is generally employed to designate a person engaged in the business of buying and selling merchandise or other personal property in the usual course of trade; 'manufacturer' to designate one engaged in the business of making or producing articles for use or sale."

A very interesting discussion of the difference between manufacturers and merchants

appears in City of New Orleans v. Le Blanc, 34 La. Ann. 596. It is true that that case involves a license tax and that, therefore, there might seem to be no analogy between it and the case at bar, but in it we find a thought that we believe is of extreme utility in determining for all purposes whether a business can be classed as that of selling, or that of manufacturing. In that case the court said:

"A manufacturer is not one who creates out of nothing, for that surpasses human power; neither is he one who produces a new article out of materials entirely raw. He is one who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process. A shoemaker is none the less a manufacturer, because he does not also tan the leather; the tanner is none the less a manufacturer of leather, because he does not breed and raise the bullocks from which the raw hides are taken. The tanner makes leather to sell, but does not buy hides to sell again. He produces the article of the leather and depends for his profit upon the labor which he bestows upon the raw material."

Here the record shows that Mrs. Karnofsky sells no materials in the raw state and no suits in the same form in which they are when she buys them. Whether that is true or not we do not know, but we must depend, on questions of fact, on the evidence as we find it in the record.

A tailor makes his profit out of the skill which he exhibits in the design and manufacture of clothing. The difference in value between raw materials in the shape of piece goods, thread, buttons, etc., and the manufactured suits, represents the labor, art, or skill of the tailor. It is that which represents his profit. A person who sells his skill is not a merchant.

An artist buys canvas and paint and converts them into a picture. If he sells the picture for more than he paid for the canvas and the paint that does not make him a merchant, because the profit represents not any increased worth in the intrinsic value of the canvas, or the paint, but it represents, rather, the skill of the painter.

In Fabacher v. Rouprich, supra, this court held that one who operates a dairy is not a public merchant just because merchandise—milk, cream, butter—is sold; the profits really resulting from the labor of feeding, taking care of, and milking cows. We find, in Bouvier's Law Dictionary, Baldwin's Library Edition, the following definition of a "merchant":

"One whose business is to buy and sell merchandise; this applies to all persons who habitually trade in merchandise."

The Supreme Court of the United States, in Tom Hong v. U. S., 193 U. S. 517, 24 S. Ct. 517, 519, 48 L. Ed. 772, found no fault with a statute of the United States which defined a "merchant" as:

"A merchant is a person engaged in buying and selling merchandise at a fixed place of business, which business is conducted in his name, and who, during the time he claims to be engaged as a merchant, does not engage in the performance of any manual labor, except such as is necessary in the conduct of his business as such merchant."

We note particularly the words "does not engage in the performance of any manual labor," etc. These words, we believe, refer to the labor of opening boxes and bales, placing goods on shelves, waiting on customers, and doing such things as are usual in the conduct of a mercantile business.

Any labor which converts the form of the article sold from its raw state into a finished product changes him, who would otherwise have been a merchant, into a manufacturer, or an artisan. It must necessarily follow that one who exercises his skill or art in manufacturing tastefully designed clothes is not a merchant in the sense intended by the article of our Code.

Mrs. Karnofsky was, therefore, not a public merchant, and it follows that the liability of her husband, which liability in some instances is recognized by Civil Code, art. 131, does not exist here.

It will be recalled that defendant contends that, even if the other facts were such as ordinarily might create liability in a husband for the debts of his wife's business venture, he cannot be held in this case because, so he contends, the tailoring venture was not the business of his wife, but, instead, was operated by a partnership; that his wife was not sole owner, but was only one of the members. We need not consider this point because we have held that, even if the business be conceded to belong solely to Mrs. Karnofsky, which, on this point, is the most favorable view possible from the point of view of plaintiff, still Mr. Karnofsky is not liable.

■ Though counsel for plaintiff feels that his client cannot recover unless it can be said that the tailoring business can be classified as that of a public merchant, we have given much thought to the wording of article 1786 of our Civil Code and to the fact that therein we find it provided that: "The authorization of the husband to the commercial contracts of the wife is presumed by law, if he permits her to trade in her own name * * *." And we have conceived that it might be said that the word "trade" appearing as above quoted in the said article refers to any kind of trade or business, and is not limited to trading as a public merchant. If so, then does not the above-quoted portion of article 1786 render a husband liable for any trade debts of a wife, whether incurred as a public merchant or otherwise, "if he permits her to trade in her own

name"? We reach the conclusion that the word "trade," in article 1786, is intended to include only such trade as is contemplated under Civil Code, art. 131; that is to say, trade as a public merchant, for, as we have already seen, the two articles should be construed together. The latter (article 1786, second paragraph) is nothing more than a recapitulation of the various situations in which a husband may be held liable for contracts made by the wife, and among these is found that situation in which he "permits her to trade in her own name" (Civ. Code, art. 1786) as "a public merchant." Civ. Code, art. 131.

That the two articles should be construed together is stated in Horton v. Haralson, 130 La. 1010, 58 So. 858, and also in Thorne et al. v. Egan, supra.

It follows that the husband here cannot be held liable either under article 131 or under article 1786, because his wife is not engaged in business as a public merchant.

The judgment appealed from, in so far as it condemned the husband for the debt of the wife, was erroneous, and

It is therefore ordered, adjudged, and decreed that the judgment appealed from, in so far as it is against defendant Louis Karnofsky, be and it is annulled, avoided, and reversed, and that there now be judgment dismissing plaintiff's suit as against said Louis Karnofsky.

Judgment reversed in part.