105 So.2d 293 (1958)
Brinsfield KING et al., Plaintiffs-Appellants,
v.
Melvie K. DEARMAN et al., Defendants-Appellees.
No. 4640.
Court of Appeal of Louisiana, First Circuit.
June 30, 1958.
Rehearing Denied October 6, 1958.
Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellant.
Weber & Weber, Baton Rouge, for appellees.
*294 FRUGE, Judge ad hoc.
Plaintiffs appeal from a District Court judgment insofar as their demands were rejected against defendants W. A. Dearman, Jr. and Marvin J. Magee, the husbands of the co-defendants, their wives, against whom a judgment was rendered in favor of plaintiffs in the sum of $796.01.
The suit involved demand for rent for an ice-cream store leased by plaintiffs to defendants (wives) under the terms of a written instrument dated March 1, 1955. The additional amounts sued and allowed by the court represented utility bills and one item for the cost of cleaning and placing the leased premises in good order.
The original petition was merely directed against the wives. Following an argument on exceptions filed on behalf of the wives, plaintiffs filed a supplemental petition, adding the husbands, W. A. Dearman, Jr. and Marvin J. Magee, as defendants, and amplified the original petition to allege that at the time the said lease was entered into the business conducted in the leased premises by the wives, they were each living in community with their husbands, and the premises were used and operated as an ice-cream store and for the sale of other foods to the public, and that the said wives were therefore operating the leased premises as public merchants engaged in a trade or business separate from that of their husbands.
Plaintiffs also alleged in the supplemental petition that the rental payments and the monies used in the operation of the leased premises and the income from the leased premises were all community funds, and that the business operated in the leased premises was operated as an enterprise of the respective communities existing between Mr. and Mrs. Dearman and Mr. and Mrs. Magee. Plaintiffs therefore alleged that said waives having executed the lease in connection with their business as public merchants bound themselves individually, and that the said husbands as heads and masters of their respective communities, are also liable with their said wives, in solido, for the obligations of the said enterprise being operated as an enterprise of the respective communities between Mr. and Mrs. Dearman and Mr. and Mrs. Magee.
Defendants answered, and by third party demand named as third party defendant. Mrs. Lillian C. Dedman, to whom the plaintiffs subleased the property, effective August 15, 1955, during the term of whose sublease the defaults alleged by the plaintiffs had occurred.
Trial was held on the merits (the third party defendant failing to appear, trial was in the nature of a confirmation of default as to the third party defendant, Mrs. Dedman), the court rendered judgment as prayed for against the two wives, Mrs. Melvie K. Dearman and Mrs. Mattie Lou Magee, but rejected plaintiffs' demands as to the husbands, W. A. Dearman, Jr. and Marvin J. Magee. Judgment was also rendered in favor of the defendants who were cast for a like amount against the third party defendant, Mrs. Lillian C. Dedman.
The appeal was perfected by plaintiffs only insofar as the dismissal of plaintiffs' claims against the husbands, W. A. Dearman, Jr. and Marvin J. Magee.
The issue here is almost entirely one of law. It concerns the liability or lack of liability of the husbands for the obligations of the separate trade or business enterprise conducted by the respective wives during the existence of the communities between said husbands and wives.
The basic facts are undisputed. The lease agreement with plaintiffs was executed by the wives, Mrs. Melvie K. Dearman and Mrs. Mattie Lou Magee. The rental for the months of November and December, 1955 under the terms of said lease has not been paid. The trial court found for plaintiffs with respect to utility services to the leased premises, such services having been during the period subsequent to August 15, 1955. when the leased premises were turned *295 over to the sublessee and third party defendant, Lillian C. Dedman. Under the facts and circumstances and as found by the trial judge, we believe the judgment as to the amount including all utility bills and other items are correct, and therefore no useful purpose would be served by analysis of these factual situations.
Defendants' position was that the two ladies who executed the lease agreement, being married women, they had no authority to bind themselves without specific authorization from their husbands to do so. There is no merit to that contention.
The critical point at issue and substantially the only point involved in this appeal, involves the defendants' contentions that the husbands allegedly stated to all concerned that if the wives went into this business venture, they were doing so on their own and their husbands assumed no reponsibility or liability for them. On this basis and on this verbal testimony alone, the District Court found that Article 131 of the LSA-Civil Code was inapplicable, and that the community was not therefore bound by the wives' execution of a lease in order to carry out a separate trade or business as a public merchant separate from the trade or business of their husbands.
The following facts are in evidence: the defendants Mrs. Mattie Lou Magee and Marvin J. Magee have been married for 13 years and have lived together continuously during that time. Mr. Magee works for Solvay Process Company and has been so employed for three years, having no other business. Defendant Mrs. Melvie K. Dearman and her husband W. A. Dearman, Jr., have been married for nine years and they have lived together continuously during that time. The husband is a pharmacist and has been since he got out of pharmacy school in 1953. The Magees and the Dearmans visited the home of the plaintiffs Dr. and Mrs. King and while on said visit, discussed the terms and provisions of the lease in question. This discussion led from preliminary discussions by the doctor with one of the wives. As a result of this discussion and the meeting of the minds in the home of Dr. King, about 7 days thereafter the lease was executed. The lease was signed by lessors Dr. and Mrs. King and lessees, the two wives. Both the Magees and the Dearmans testified that the husbands repeatedly stated that they were not parties to the lease agreements, that the wives were going into this business on their own, that the husbands would under no circumstance be held liable for any of the liabilities of such business and that said wives were venturing into this business enterprise contrary to the wishes and definitely against the better judgment of their husbands. While the Kings do not deny this testimony on the part of the Magees and Dearmans, they stated that they did not remember such statements being made. The trial court found for the defendants on that factual point and we agree with him, except that we disagree with his application of the law thereto. There is no question that the husbands knew that their wives were going into this business because they were present when the deal was confected.
It is clear therefore, that at the time the obligation herein sued upon and the business enterprise entered into by Mrs. Magee and Mrs. Dearman, the two couples were each married and living together during the existence of their respective communities of acquests and gains. In each instance the husband was engaged in a different and completely separate business; the wives went into the business operation as public merchants in the dispensing of food, ice-cream, etc., to the public generally, that the husbands knew of the wives' intention to go into the business, the husbands participated in the discussions and negotiations prior to the time that their wives went into the business, their husbands knew of the execution of the lease, knew of the operation of the business by the wives subsequent to the execution of the lease, and, in fact, assisted their wives from time to time in the operation of the business. The evidence *296 further shows that at least in the case of Mr. and Mrs. Magee, community funds were used for the initial payments required to be made under the terms of the lease, and that insofar as the proceeds of the business and the profits concerned, in each instance the two wives used the profits and monies received for community purposes as they saw fit, and for the normal and usual things for which a wife spends money in her possession, and for purposes for which funds obtained directly from the husband would under other circumstances have been used, making the income from the business become both in legal theory and in actual practice, community funds. Under the facts as set out, plaintiffs contend that the issues here come squarely under the provisions of LSA-Civil Code, Article 131, 2402 and 2403 and that the obligations here sued upon are unquestionably community obligations, for which the husbands are legally responsible. We are in accord with that view.
The trial court held that because of the provisions of LSA-Civil Code, Article 1786 and a portion of the Orleans Court of Appeal opinion in Charles Lob's Sons v. Karnofsky, 144 So. 164 (later reversed on a different but related point by the Supreme Court, 177 La. 229, 148 So. 34), the husband's responsibility for the debts of his wife as a public merchant grow only out of his consent or permission, express or implied; that therefore an absence of consent or a denial of it, as the court found to be the case here, prevented the attachment of any obligation to the community. The trial court, however, did not consider the question of whether or not the assets or profits from such a separate business would remain separate under such circumstances, nor the effect of the community having benefited by the receipt of the profits during the continued operation of the business during the months which ensured after the execution of the lease.
The trial court was correct in its ruling with regard to the liability of the wives both under the provisions of the Married Women's Emancipation Acts, now appearing as LSA-R.S. 9:101-103, or under the older provisions of LSA-Civil Code Article 131, which states:
"If the wife is a public merchant, she may, without being empowered by her husband, obligate herself in anything relating to her trade; and in such case, her husband is bound also, if there exists a community of property between them.
"She is considered as a public merchant, if she carries on a separate trade, but not if she retails only the merchandise belonging to the commerce carried on by her husband."
In sub-part A "Emancipation and Powers of Women," we quote from LSA-R.S. 9:101:
"* * * They may make contracts of all kinds, and assume or stipulate for obligations of all kinds, in any form or manner now permitted, or which may hereafter be permitted, by law for any person, married or unmarried, of either sex, and in no case shall any act, contract, or obligation of a married woman require, for the validity or effectiveness thereof, the authority of her husband or of the judge."
It is our opinion therefore, that when the wives executed the lease in question, they thereby bound themselves within said provisions of the statute quoted, supra.
In order to determine the liability of the husband here, it is believed both necessary and desirable to consider the general status of the business enterprise. Was the business a community business of the two wives' respective communities with their husbands? Did the profits, if any, and presumably, also the assets, if any, fall within the communities existing between the said wives and their said husbands? In that connection, and in addition to LSA-Civil Code, Article 131 quoted above, reference *297 should be made to LSA-Civil Code, Articles 2334, 2402, and 2403, which read as follows:

Article 2334: "The property of married persons is divided into separate and common property.
"Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.
"The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property. * * *"

Article 2402: "This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either or right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. * * *"

Article 2403: "In the same manner, the debts contracted during the marriage enter into the partnership or community of gains, and must be acquitted out of the common fund, whilst the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects."
The above articles show what is and what is not community property. We observe, however, that the third paragraph of Article 2334 has been somewhat modified by construction to hold that a wife's earnings when carrying on a business, trade or occupation or industry separate from her husband, do fall within the community if the husband and wife are living together in community and the converse is true if they are living separate and apart, the earnings in her business has been construed as a separate property. Charles Lob's Sons v. Karnofsky, 1933, 177 La. 229, 148 So. 34; Houghton v. Hall, 1933, 177 La. 237, 148 So. 37; Succession of Howell, 1933, 177 La. 276, 148 So. 48; Succession of Le Jeune, 1952, 221 La. 437, 59 So.2d 446.
Under the above Articles, and particularly the above cited cases which discuss the whole problem at length, it is beyond question that the wife's earnings from separate trade or business as a public merchant or otherwise, fall within the community if she is living in community with her husband at the time said business is carried on. Unquestionably, therefore, such is true in the instant case. Attention is also called here to the testimony indicating the use for community purposes of the funds derived from the operation of the business.
Despite this community nature of the business and its profits as above discussed, and despite the provisions of the first paragraph of Article 131 of the Code, which provides:
"If the wife is a public merchant, she may, without being empowered by her husband, obligate herself in anything relating to her trade; and in such case, her husband is bound also, if there exists a community of property between them. * * *"
the trial judge held that under LSA-Civil Code, Article 1786, and a portion of the Court of Appeal's opinion in Charles Lob's Sons v. Karnofsky, supra, the husband could be bound only where he gave his *298 authorization or permission, and since such was denied here by the husbands, there was therefore no liability. As the Court of Appeal's opinion in the Karnofsky case is actually the nearest and only authority for the holding of the trial court (and that only by inverse construction), it may be well to examine the facts, and the holdings of both the Court of Appeal and the Supreme Court in dealing with the Karnofsky case.
Mrs. Karnofsky operated a custom tailoring shop and had for many years. During all of this time, and at the time of suit, she was living in community with her husband. Suit was brought against her for nonpayment for some merchandise which she had ordered for her tailoring business, and her husband was joined as a defendant on the basis that the wife was transacting a separate trade as a public merchant, and the husband therefore was liable under the provisions of Article 131 of the LSA-Civil Code. Mrs. Karnofsky did not defend the suit. Judgment against her was rendered by default. Mr. Karnofsky, however, defended on the basis that he had not authorized the purchases made by his wife, denied that the tailoring business conducted by his wife made her a public merchant, and, therefore, that the provisions of Article 131 of the LSA-Civil Code were inapplicable.
In dealing with these defenses, the principal point considered by both the Court of Appeal, and later by the Supreme Court in reversing the Court of Appeal on that score, was with regard to the definition and meaning of "public merchant" as used in Article 131. However, the Court of Appeal, with regard to the husband's defense, of alleged lack of authorization on his part, felt that Article 131 should be construed with Article 1786, which states:
"The incapacity of the wife is removed by the authorization of the husband, or, in cases provided by law, by that of the judge.
"The authorization of the husband to the commercial contracts of the wife is presumed by law, if he permits her to trade in her own name; to her contracts for necessaries for herself and family, where he does not himself provide them; and to all her other contracts, when he is himself a party to them. * * *"
Because of some of the language in the second paragraph of Article 1786, the Court of Appeal felt that the husband could be bound under that Article (and likewise under Article 131) only when there was some permission, authorization or assent.
We observe that in neither the Court of Appeal opinion nor the Supreme Court opinion (177 La. 229, 148 So. 34) is there any motion of the slightest evidence of any lack of consent on the husband's part, but rather every indication that the wife had transacted her separate business for a period of approximately ten years while she lived in community with her husband.
It seems to us that the Court of Appeal's discussion of assent or permission is dicta because there was no actual factual basis for any dispute in that regard.
The Supreme Court in consideration of the Karnofsky case did not find it necessary to go into the question of authorization, as had the Court of Appeal. The Supreme Court construed the issue as being proper definition of the term "public merchant" as used in Article 131 and the first holding of the Court of Appeal that the term did include the type of business being carried on by Mrs. Karnofsky, and that, therefore under Article 131 the husband was liable for the debts of her business. Particularly pertinent here is the following portion of the Supreme Court opinion (148 So. 34, 36):
"The theory of the law, as expressed in the codal article, in holding the husband bound for the debts of his wife's separate business, is that the profits of the business belong to the matrimonial community. This was so up to the passage of Act No. 170 of 1912, and we think it is still so where the wife engaged in a separate trade is living with *299 her husband. See Houghton v. Hall, 177 La. 237, 148 So. 37, and Succession of Howell, 177 La. 276, 148 So. 48.
"In view of the intent and purpose of the law, it would be manifestly unjust to restrict its application to only the commercial enterprises of the wife in which she merely sells the goods that she buys and not to extend its application to a business in which she contributes her industry and skill to converting what she buys into another product. Any other interpretation of the law, it seems to us, would defeat the object the Legislature intended to attain, namely, to hold the husband responsible with his wife for the obligations of her separate business in the profits of which he jointly shares."
For the above and foregoing reasons, the District Court judgment rejecting plaintiffs' demand as to the defendants W. A. Dearman, Jr. and Marvin J. Magee is hereby reversed and that accordingly, the judgment of the District Court is hereby amended to include these two defendants as well as their wives, cast in judgment in solido.
Reversed.