ELLIS, Judge.
The facts of this case are clear and undisputed.
On September 7, I960- plaintiff-lessor and Miss Jeannette James, lessee, executed a written lease, .covering an apartment in Baton Rouge. The lease was for one year at a monthly rental of $72.50 and contained the normal acceleration clause and a clause prohibiting sub-leasing without written approval.
It was stipulated between counsel that the lessor told Miss Jeannette James that he would not rent the apartment to her unless she was going to be married. The lease was witnessed by defendant James E. Keyser, Jr., who, three months later, married Miss James and moved into the apartment with her. The rent was paid from community funds, and James E. Key-ser, Jr., attempted unsuccessfully to secure a sub-lessee prior to their moving out about May 31, .1961. The rent for June, July and August was not paid.
Plaintiff seeks judgment against Mrs. Jeannette Keyser as lessee and against her husband, James E. Keyser, Jr., on the ground that he, “by his actions in moving into said leased premises and otherwise, agreed to all of the terms of said written contract of lease.”
The trial court gave judgment as prayed for against Mrs. Jeannette Keyser and dismissed the suit as against James E. Keyser, Jr. From this decision the plaintiff-lessor has appealed.
The issue before this court is whether or not James E. Keyser, Jr. from his actions, can be held to have impliedly assumed and become obligated to pay the debt of his wife contracted prior to the marriage.
The actions of the husband of moving into the apartment, paying tire rent, and attempting to find a sub-lessee cannot be construed as making him a party to the written contract. The trial judge in his written reasons for judgment correctly pointed out that “ * * * the court was unable to determine from the testimony of either the plaintiff or the defendant that James E. Keyser, Jr., either entered orally into such lease or had guaranteed the lease.”
*99 Plaintiff strongly contends that the husband can ratify and assume on behalf of the community, the wife’s prenuptial debts, and cites in support Succession of Sangpiel, 114 La. 767, 38 So. 554 (1905). In that case a creditor sought unsuccessfully to hold the estate of the wife responsible for debts incurred in operating a bar which belonged to the wife’s separate estate. The business had been conducted entirely by the husband for sixteen months.
The Sangpiel case can be distinguished from the case at bar in two very important particulars. The husband in the Sangpiel case was found not to have been acting as agent for the wife, but for himself. All credit accounts and bank accounts were carried in his name, and when the business was sold, he received a portion of the price. The licenses necessary to operate a bar were obtained in the name of the husband. In the case at bar the husband was merely acting as agent for the wife with reference to the lease.
The second ground of distinction is that in the Sangpiel case the obligations sued on were actually contracted during the marriage and thus, the husband was not held responsible for debts of the wife contracted; prior to marriage. In the case at bar, the lease was executed well before the marriage.
In situations where the wife contracts debts during the marriage, the law presumes an agency relationship between the community as principal and the wife as agent.
Thus, in Perdido Finance Company v. Falgout, 77 So.2d 896 (Orleans App.1955) the husband was held liable on a note signed by the wife during the marriage individually and under an express mandate from her husband as his agent. In Philip Werlein, Ltd. v. Madsen, 10 La.App. 550, 120 So. 237 (1st Cir. 1929) this court held the husband liable to pay for a piano used in the community business but purchased by the wife during the marriage, finding that the wife was the agent of the community. See also Neiman-Marcus Co. v. Viser, La.App., 140 So.2d 762 (2nd Cir. 1962) and Goldring’s, Inc. v. Seeling, La.App., 139 So.2d 538 (4th Cir. 1962).
However, as to debts contracted prior to a marriage, no presumption of an agency relationship arises because there is no community — no relationship of husband and wife between the parties. In such a situation, a heavy burden of proof is placed on the creditor claiming that the husband later assumed the obligation, or, to show an actual agency relationship. In 'fact, Article 2278 LSA-C.C. provides: “Parol evidence shall not be received: * * * 3. To prove any promise to pay the debt of a third person.” There is no such proof in this record.
There is an excellent history and discussion of Article 2403 LSA-C.C. in Vol. 21, Tulane Law Review, 125, 126, a portion of which is hereinafter set forth:
“* * * -phe Spanish law has contained since the year 1255 A.D. the provision that an ante-nuptial debt of one spouse is the liability of his separate property alone. See 1 de Funiak, Principles of Community Property (1943) 435 § 156. On the other hand, the French Civil Code provides that the community is liable for all movable debts of the spouses owed on the date of the marriage, and for interest and arrearages on personal debts of the spouses. Art. 1409, French Civil Code (Wright’s tr. 1908) * * * ”.
The Code Napoleon article reads as follows :
“CN 1804, Art. 1409:
“The liabilities of the community consist:
“1. Of all movable debts which husband and wife owed upon the date of the celebration of their marriage, or with which the successions which fall to them during the marriage are bur *100 dened, saving the right of reimbursement for debts relative to the separate immovables of either spouse;
“2. Of debts, as well of capital as of arrearages or interest, contracted by the husband during the community, or by the wife with the consent of the husband, saving the right of reimbursement in proper cases;
“3. Of arrearages and interest only of rents or debts which are personal to the two spouses;
“4. Of repairs owed by the usu-fructuary of immovables which do not enter into the community;
“5. Of the alimony of husband and wife, of the education and support of the children, and of any other charge of the marriage.” (9 LSA-C.C. p. 797.)
Continuing from the above cited law review:
“ * * * The latter provision, paragraph 3 of this Article, indicates that although there are certain ante-nuptial debts for which community liability if not absolute, as for example, debts resulting from the acquisition of separate immovable property, nevertheless the community is liable for interest and arrearages on such debts, since it has the enjoyment of the property concerned. See Laurent, Principes de droit civil francais XXI (3 ed. 1878) nos. 402, 403, pp. 466, 467. The fact that the provisions of the Spanish, rather than of the French, law, was incorporated into Louisiana law seems to indicate a clear legislative intent that no debts whatever, incurred anterior to the marriage, are to be paid otit of the community funds." (Emphasis added).
For the above reasons the judgment is affirmed.
Affirmed.