HOOD, Judge.
The American National Bank of Beaumont instituted this suit against E. E. Rathburn to recover the balance alleged to be due on a credit card account. The trial judge rendered judgment for plaintiff, and defendant has appealed.
The questions presented are: (1) Did defendant’s wife incur the debts which plaintiff seeks to collect? (2) If she did,' is defendant, as head and master of the community, obligated to pay them ?
We have concluded that the community is not liable for these debts, even if we as *361 sume that they were incurred by defendant’s wife. It is unnecessary, therefore, for us to consider the first question presented. We make no finding as to whether defendant’s wife incurred the debts which plaintiff seeks to collect, but instead we merely assume, for the purpose of this suit, that she did incur them.
In April, 1969, plaintiff sent to defendant two credit cards, known as Bank-Americards. Defendant did not apply for or request these cards, and he never used them. He destroyed both cards immediately after he received them. In April, 1970, plaintiff sent to defendant two more such credit cards, again unsolicited, and with these cards it enclosed an application for credit. Defendant did not sign or return the application for credit, he did not sign the cards, and he did not use either of those cards. These last mentioned credit cards were not destroyed by defendant, however, but instead he placed them in a desk drawer in his home.
On May 11, 1970, defendant married Norma E. Bearman, but the marriage was short lived. Rathburn and his wife separated on July 14, 1970, and they have not lived together since that time. Neither of them, however, had filed an action for separation or for divorce up to the time this suit was tried, on April 14, 1971.
Shortly after defendant and his wife separated, Rathburn was informed by plaintiff bank that the maximum credit which could be extended on the Bank-Americard issued to him had been exceeded. Upon receiving that information Rath-burn made a search and discovered that one of the two credit cards received by him in April 1970, had been removed from his desk drawer. He immediately reported that fact to plaintiff, and he destroyed the remaining card.
The missing credit card was recovered later by plaintiff bank, and it was introduced in evidence in this case. The card had been issued to “E. E. Rathburn,” and when recovered it was found to bear the signature “Norma E. Rathburn.” Between July 24 and September 25, 1970, purchases totaling $1,249.78 were charged to defendant Rathburn on this card. Each of the charge slips making up this total indebtedness hears the signature “Norma E. Rath-burn,” and the signature on each such slip appears to match the one which is on the recovered credit card. The signature, however, has not been identified as being that of defendant’s wife.
Plaintiff made demand on defendant to pay the above mentioned account, but defendant refused. This suit was filed on December 22, 1970. Following a trial, judgment was rendered by the district court in favor of plaintiff for the full amount claimed.
The trial judge did not assign reasons for judgment, but he obviously concluded that defendant’s wife incurred the debts which were charged to the credit card account, and that she had authority to act as agent for defendant in binding the community. As we have already noted, we assume for the purpose of this suit that defendant’s wife incurred the indebtedness. The question remains, however, as to whether she had authority to obligate the community.
Plaintiff points out that although defendant and his wife were not living together, they were still married when these debts were contracted, and it argues that under the provisions of LSA-C.C. art. 2403 the debts thus are community obligations.
The phrase “debts contracted during the marriage,” as used in Article 2403 of the Civil Code, must be construed with other provisions of the Code regulating the community of acquets and gains. Other articles on that subject show that all debts contracted during marriage are not necessarily community debts. To be community debts, they must be contracted under the circumstances prescribed by law for the obligation of the marital community. Article 2404 of the Louisiana Civil Code provides that the husband is the head *362 and master of the community, and that he alone may obligate the community. Ordinarily, debts contracted by the wife do not bind the community, although they are “debts contracted during the marriage.”
In Watson v. Veuleman, 260 So.2d 123 (La.App. 3 Cir. 1972), we held that a debt incurred by the wife in purchasing an automobile for her son did not bind the community. The applicable law relating to the wife’s authority to obligate the community was stated therein, as follows:
“Article 2404 of the Louisiana Civil Code provides that the husband is the head and master of the community. Ordinarily he alone, and not the wife, may obligate the community. Several exceptions to this general rule have been established, however, under which the community may become obligated for debts contracted by the wife. The only such exceptions which merit consideration here are: (1) When the debt is incurred by the wife under the husband’s obligation to supply necessaries; (2) when the wife is an agent of the community ; and (3) when the obligation is ratified by the husband. See comment, 25 L.L.Rev. 201 (1964) at pages 234 and 235; LSA-C.C. art. 120; Montgomery v. Gremillion, 69 So.2d 618 (La.App. 2 Cir. 1953); Royal Furniture Company of Baton Rouge v. Benton, 260 La. 527, 256 So.2d 614 (1972).”
The evidence does not show, and plaintiff does not argue, that the purchases made on this credit card were for “necessaries.” The record also does not show that defendant ever ratified the purchases made on that account. It shows, on the contrary, that defendant has consistently refused to ratify or approve any of the debts which were charged to his credit card account. Defendant Rathburn thus cannot be held to be liable for these debts, as head and master of the community, unless the evidence establishes that he expressly or impliedly authorized his wife to act as his agent in binding the community.
Defendant’s testimony is uncontradicted that he did not expressly authorize his wife to use the credit card. He did not intend for the cards to be used at all, and he did not know that one of them had been used until he discovered, after the purchases had been made, that the card had been removed from his desk drawer without authority.
We find no evidence tending to show that defendant tacitly or impliedly authorized Mrs. Rathburn to act as his agent in binding the community for any purpose. Plaintiff does not refer us to any conduct on the part of Rathburn, or to any statement made by him, which reasonably could have been interpreted by plaintiff, or by any of the merchants from whom purchases were made, as a representation by defendant that his wife had authority to charge purchases to his account or to bind the community.
Defendant and his wife were married after the credit cards were issued to Rath-burn. During the short period of time they lived together, Mrs. Rathburn did not have a bank account of her own, and she had no authority to draw on his account. They never established a joint account in any bank. The evidence does not show that she ever made any purchases on credit while they were married, or that defendant had ever paid any bill which she had incurred.
Plaintiff contends that, the law presumes an agency relationship between the community as principal and the wife as agent. . It argues that such a presumption applies here, and that the burden rests upon defendant to prove that such an agency relationship did not exist and that the purchases were not for necessaries. It takes the position that defendant has failed to meet that burden of proof.
*363 To support that argument plaintiff relies on Keyser v. James, 153 So.2d 97 (La.App. 1 Cir. 1963), where the following language was used:
“In situations where the wife contracts debts during the marriage, the law presumes an agency relationship between the community as principal and the wife as agent.”
With due respect to our brothers of the First Circuit Court of Appeal, we are unable to agree with that statement of law. In the first place, the quoted portion of the opinion is purely dictum. The court held in Keyser that for other reasons the husband was not liable for the debt incurred by his wife. The above statement thus was unnecessary for the disposition of that case. Secondly, the four cases cited in Keyser as authority for the quoted statement, do not support such a pronouncement. In Perdido Finance Company v. Falgout, 77 So.2d 896 (La.App.Orl.1955), for instance, the wife acted under an express mandate from her husband. In Philip Werlein, Ltd. v. Madsen, 10 La.App. 550, 120 So. 237 (La.App. 1 Cir. 1929), the husband not only authorized the purchase of a piano by his wife, but he also ratified the transaction after it was completed. And, in the last two cited cases, Neiman-Marcus Co. v. Viser, 140 So.2d 762 (La.App. 2 Cir. 1962), and Goldring’s Inc. v. Seeling, 139 So.2d 538 (La.App. 4 Cir. 1962), the husband regularly paid debts incurred by his wife during the marriage, but refused to do so after the separation, without notifying the creditors that he would no longer honor those accounts. None of the cited cases, therefore, support the above quoted dictum which appears in Keyser. Finally, we agree with Professor Robert A. Pascal in the following criticism which he makes of the Keyser case :
“Certainly no other decision has gone so far, and a presumptive mandate in such terms in favor of the wife would make her the alter ego of the husband in all things and therefore violate the division of authority between husband and wife in all matrimonial regimes.” (27 La.L.Rev. 455)
We conclude in the instant suit that defendant never authorized his wife, either expressly or impliedly, to act as his agent and to obligate the community. Mrs. Rathburn had no authority to bind the community, and we think the trial judge erred in condemning defendant to pay the debts which she incurred.
We know of no reason why charges made on a credit card account should be treated differently than charges made by the wife on any other charge account.
For the reasons assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant, E. E. Rathburn, and against plaintiff, The American National Bank of Beaumont, rejecting plaintiff’s demands, at its costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.